57 So.2d 238 (1952)
STATE ex rel. SINGELMANN
v.
MORRISON, Mayor, et al.
No. 19791.
Court of Appeal of Louisiana, Orleans.
March 3, 1952.
Rehearing Denied March 17, 1952.
Writ of Certiorari Denied April 28, 1952.
*240 R. A. Dowling, New Orleans, for George Singelmann, plaintiff and appellant.
Anna Andollina, New Orleans, for intervenors and appellants.
Henry B. Curtis, City Atty., and Charles E. Cabibi, Asst. City Atty., New Orleans, for defendants and appellees.
McBRIDE, Judge.
The relator and the intervenors have appealed from the judgment of the court below denying their prayer for a mandamus or mandatory injunction.
The learned trial judge handed down written reasons for judgment, which we commend, and we adopt that part of them quoted below as the opinion of this court:
"A mandamus or mandatory injunction is sought against the Mayor and Commissioner of Public Property of the City of New Orleans, to compel the removal of a statue or memorial erected on public property to St. Frances Xavier, Mother Cabrini.
"Plaintiff is a lay member of a Protestant religious sect. The Intervenors who joined him are ministers of various Protestant religious sects. Plaintiff and Intervenors appear in their individual capacity as citizens and taxpayers, not as the representative of any organized congregations or religious sects.
"Petitioner and Intervenors complain that the Mayor and Commissioner of Public Property are not performing their duty because they permit the challenged statue to remain on public property in violation of state and federal constitutional prohibitions. The gravamen of the complaint is that the statue portrays Mother Cabrini, or Frances Xavier Cabrini, as a nun of a religious order of the Roman Catholic Church, and that the inscription on the monument is as follows:
 "`St. Frances Xavier
 Mother Cabrini
 Erected August 25, 1949
 By The Order Of The Alhambra
 During Its 23rd Biennial Convention.'
"The Order of Alhambra is a social affiliate of the Knights of Columbus, a Catholic fraternal society. Membership in the Order of Alhambra is restricted exclusively to members of the Knights of Columbus.
"Defendants admit the statue is erected on the neutral ground of Harrison Avenue, at the intersection of Canal Boulevard, two wide and well-paved boulevards in a fine residential section of New Orleans.
"The Complainants urge that the erection of this statue violates Article 1 (Section 4) and Article 4 (Section 12) of the Louisiana Constitution of 1921, and the First Amendment to the Constitution of the United States. The First Amendment to the Constitution of the United States prohibits Congress to make a law respecting the establishment of religion. At the outset, I must hold that the provision of the federal constitution is not properly invoked and there is no federal question involved, since the erection of the statue here complained of cannot be held to be the establishment of a religion either by Congress or the Legislature.
"Article 1, Section 4, of the Bill of Rights of the Louisiana Constitution of 1921 provides: `Every person has the natural right to worship God according to the dictates of his own conscience. No law shall be passed respecting an establishment of religion, nor prohibiting the free exercise thereof; nor shall any preference ever be given to, nor any discrimination made against, any church, sect or creed of religion, *241 or any form of religious faith or worship.'
"The provision of Article 4, Section 12, of the Louisiana Constitution of 1921 invoked by plaintiff provides, inter alia: `The funds, credit, property or things of value of the State, or of any political corporation thereof, shall not be loaned, pledged or granted to or for any person or persons, association or corporation, public or private; * * *.'
"There is no charge that the erection of this monument is ultra vires the powers of the City of New Orleans. Under Section 8, Paragraph 4, Act 159 of 1912 (The City Charter), the Commission Council is given the power `To improve and embellish the public squares and parks and places.'
"The doctrine is now generally recognized that the reasonable use of public money for memorial buildings, monuments and other public ornaments, designed to inspire sentiments of patriotism or of respect for memory of worthy individuals is for a public purpose. Barrow v. Bradley, 190 Ky. 480; 227 S.W. 1016; In re Opinion of the Justices, 190 Mass. 611; 77 N.E. 820; and 30 A.L.R. 1036.
"That monuments and statues may rightly be erected by municipalities in the public streets, avenues, places, squares and parks, has repeatedly been held. Statues of men and women in commemoration of great public events are now considered as the legitimate belongings of public places. Cities throughout this country give abundant proof that statues, ornamental temples, obelisks, pillars and columns, have long been considered objects of approval and admiration. Parsons v. Van Wyck, 56 App. Div. 329, 67 N.Y.S. 1054 and 18 A.L.R. 1259.
"From time out of mind grateful communities have at public expense and with public approval, paid fitting tribute to its deserving dead, who in peace or war, had served their community, state or nation. In discussing the historical facts that follow, the Court first observes that it can take judicial notice of all historical events, current and otherwise, that everybody knows or should know.
"Only recently one of the first military funerals ever recorded in Louisiana was held in New Orleans for Sister Regina Purtell, 84 year old Sister of Charity, at whose Requiem Mass and burial stood a Guard of Honor composed of a medical detachment and firing squad from Camp Leroy Johnson, and nurses from local military and civilian hospitals. Could it be said that the use of this medical detachment was the illegal use of a public body for private purposes since Sister Purtell was honored, not because she was a member of an order of the Roman Catholic Church, but honored because of her sacrifices, and for her great work among the poor and afflicted?
"The City of New Orleans is studded with monuments and memorials to its celebrated dead. In front of the very courthouse where the Court sits is the bronze statue of Louisiana's only Chief Justice of the United States, Edward Douglas White, who appears in his judicial robe.
"In Margaret Square is the statue of Margaret Haughery. The statue shows her sitting in a chair, as she did in front of her bakery where she served the sick, the poor and the orphan. The statue depicts her dressed in frugal clothes, with her arm around the shoulder of a little child, who looks appealingly and gratefully into her eyes. The lone word on the statue `Margaret' in its simple eloquence recalls to all the story of her sacrifices and deeds of charity.
"We find in Lafayette Square, opposite City Hall, a pedestal to John McDonough, a Protestant, who founded the public school system of New Orleans. Each year the school children of New Orleans make a pilgrimage to the monument for the purpose of paying tribute and homage to his memory because of his generosity.
"General Beauregard sits astride his horse in life-like figure guarding the Esplanade Avenue entrance to City Park, in memory of his military exploits as a general of the Confederate Army. Then there is the towering shaft to General Robert E. Lee at Lee Circle, and Andrew Jackson astride his charger in historic Jackson *242 Square, both honored for their military exploits.
"We find the streets of the City of New Orleans named after saints, St. Roch, St. John, St. Claude, St. Charles, St. Louis, St. Ann, St. Peter, and so on. Around the streets of New Orleans we see signs or tablets located on public streets or public property directing communicants to this or that church of every denomination. Perhaps there are too few reminders for people to return to Church and God.
"Consider Sister Stanislaus who organized and personally supervised the nursing corps and cared for the sick for more than 50 years at Charity Hospital in New Orleans. Could legal objection be made to the placing of a statue in Charity Hospital showing her in the garb of a Sister of Charity, with suitable inscription that it is dedicated to `Sister Stanislaus' in commemoration of her leadership and sacrifices in the care of the sick and needy? Sister Stanislaus and Charity Hospital are synonymous, the one suggesting the other.
"Leonidas Polk was the first Episcopal bishop of Louisiana and a Confederate general. Could legal objection be made to a statue in his memory on public property, say alongside that of General Beauregard, because he was an Episcopal bishop?
"Also in New Orleans, in addition to those named above and others, are monuments, plaques or markers to the following public benefactors:
"Plaque dedicated to Administration of Dr. Mabel Fontane Wood, 1932-1938, National Federation of Business and Professional Women's ClubsN. Broad and Canal Streets.
"Jefferson Davis Monument erected through the patriotic efforts of the Jefferson Davis Monument Association of New OrleansS. Jefferson Davis and Canal Street.
"Plaque honoring Toby Hart, placed by his son, W. O. Hart, N. Jefferson Davis and Canal Street.
"Monument honoring Father Abram J. Ryan, Poet-Priest of the Confederacy of the Louisiana Division, United Daughters of the ConfederacyS. Jefferson Davis and Banks Street.
"Plaque honoring Robert S. Maestri, former Mayor of the City of New Orleans, by the New Orleans Floral Trail sponsored by the Young Men's Business ClubLafayette Square.
"Monument in honor of the Men and Women of the Third Ward who served in World War II sponsored by the Banks Social and Carnival Club, Inc.S. Jefferson Davis and Tulane Avenue.
"Ornamental water trough in memoriam of Samuel LowenbergS. Carrollton and St. Charles Avenues.
"Plaque in memory of Julian K. Byrne, Past President, New Orleans Kiwanis ClubS. Claiborne and Nashville Avenues.
"Monument in honor of the Wedel Brotherson neutral ground of Canal Boulevard at City Park Avenue.
"Plaque dedicated by the City of New Orleans to Simon Bolivarneutral ground of N. Broad Street at Canal Street.
"Statue of Charles Didier Dreuxneutral ground at Jefferson Davis Parkway and Canal Street.
"Statue of Gayarre PlaceTriangle Tonti, Esplanade and Bayou Road.
"Palmer Park honoring Dr. B. M. Palmer, a Presbyterian ministerS. Claiborne and S. Carrollton Avenues.
"As every citizen or visitor knows, there is hardly a village, town or city in Louisiana which has not honored some outstanding citizen or benefactor with a statue, marker or plaque located on its courthouse or other public square.
"In Baltimore, Maryland, at the entrance to Druid Hill Park, one of the largest public parks in that city, stands the statue of Martin Luther.
"In Elmira, New York, on public property, is the statue of Thomas K. Beecher, a Baptist minister, an early settler and public benefactor, who was so honored by his fellow-townsmen.
"On one of the bronze doors leading to the rotunda in the middle of the Capitol Building in Washington, D. C., reproduced *243 in bas relief, is the baldpate of Father Perez. It is the custom to touch the baldpate of Father Perez for good luck. Father Perez was neither a chaplain of the House nor of the Senate. He is renowned solely because he was the monk who bade Columbus bon voyage when the explorer set out from Spain on his historic journey that resulted in the discovery of America.
"In Washington, D. C., is the renowned St. Elizabeth's Hospital for the mentally afflicted. St. Elizabeth's was built by Congress at public expense as a place for the most humane care and treatment of the mentally ill. The moving spirit behind the establishment of the hospital was a kindly woman named Dorothea Lynde Dix (a name similar to our own renowned Dorothy Dix of journalistic fame). Retired from teaching by a physical disability, she led her crusade for reform when she discovered the shocking plight of the insane of her day, most of whom were confined in jails, almshouses, stables and kennels. From 1840 to 1881 Miss Dix's inspiring energy initiated the founding or enlarging of thirty-two mental hospitals in this country and abroad. Virtually by herself she persuaded Congress to construct in the nation's capitol a government hospital for the insane. It was built on a tract named by its former owner for St. Elizabeth of Hungary, who was canonized for her work in behalf of the sorely afflicted. The name was retained for the hospital. It has never been suggested that the name of St. Elizabeth as given to this public hospital violates any constitutional guarantees of religious freedom, the establishment of a state religion or the use of public property for private purposes. Should Congress elect to establish a memorial to Dorothea Lynde Dix, could it be urged that it would be a violation of the First Amendment to the federal Constitution?

* * * * * *
"A New Orleans naval hero, Commander Howard W. Gilmore, lay sick and wounded on top of the submarine he commanded in World War II. Realizing there was not time for him to be taken below without endangering the entire crew, he gave his famous order `Take her down,' thereby consigning himself to a watery grave and sacrificing himself to save his brother officers and men. Could objection be made if a grateful community should erect a statue to him to commemorate his noble deed?
"As stated before, to deny the statue of any hero his rightful place on public property merely because such hero has been honored by his church, whether it be Catholic, Protestant, Jewish or otherwise, would indeed do violence to Section 4 of Article 1, Constitution of 1921 of Louisiana: `* * * nor any discrimination made against, any * * * sect or creed * * * or any form of religious faith or worship.'
"The recent dedication of the interfaith altar in the lower church of Grace Baptist Temple, in Philadelphia, as a memorial sanctuary to the 600 fighting men, calls to mind the four heroic chaplains who perished with them in the North Atlantic in World War II, when the troopship U. S. S. Dorchester was torpedoed on February 3, 1943; the four heroic chaplains, two Protestant ministers, a Catholic Priest, and a Jewish Rabbi, forgot their differences of ritual and faith when they gave their life jackets to four comrades and went to their deaths joined arm in arm with prayers for all. If one of these noble chaplains was a native of New Orleans, what citizen or taxpayer could legally object to the erection of a statue on public property to him or all dressed in their respective religious garbs? * * *
"This brings us finally to the statue of Mother Cabrini. The statue is a simple one, measuring no more than four feet at its base, by six feet in height, and depicts her dressed in the garb she wore when giving her charities to the poor and ministering to the sick and afflicted of all creeds. It is true that, at the present time, the inscription on the statue relates exclusively to her canonization, and to the group that sponsored and paid for it, without any reference to her public charities. While it might be more appropriate to have some inscription of her public charities, since that justifies its erection on public *244 property, the absence of such inscription should hardly be the reason for its removal. The reason for its erection, not its inscription, governs its right to rest on public property. However, the City Ordinance provides for a suitable plaque to recite her public benevolences and benefactions, and I am advised in due time such a plaque will be placed thereon, as it should be.
"The statue of Frances Xavier Cabrini, or Mother Cabrini, was erected and placed in its present location by the Order of Alhambra, with the consent of the City authorities and formally accepted by City Ordinance, without cost to the City. It was accepted by the City in honor and recognition of the outstanding services rendered to the community in the field of child care, and for her effort and sacrifices during the Yellow Fever epidemics of 1897 and 1905, when she assisted the authorities and made personal visits to the homes of the sick and afflicted, and because she established and helped maintain an orphanage in the City of New Orleans. It is true that Mother Cabrini was not a native of New Orleans, nor did she live here exclusively. She was a member of the Order of Missionary Sisters of the Sacred Heart, and practised her charities and philanthropies in many other cities. While it is true she did not actually do these acts of benevolence alone, but was assisted by members of her Order, she was the undoubted leader who inspired her co-workers and directed them in their charitable work.
"In the case of Sears v. Hopley, 103 Ohio St. 46, 132 N.E. 25, 16 A.L.R. 925, a monument was erected in a highway by proper authority to advise the public that it was a part of Lincoln (Lincoln Highway). It had the further inscription that it was dedicated to the personal memory of a secretary of the Lincoln Highway Association. The court held that since the statue was primarily dedicated to the Lincoln Highway, the fact that it had an additional inscription in memory of the individual secretary did not detract from its public purpose.
"If the statue to Mother Cabrini were erected as a shrine for the dissemination or propagation of the Catholic Faith, or a subterfuge for a place of worship, it might well violate the constitutional provisions invoked by the complainants. There is not the slightest suggestion that Mother Cabrini's canonization as a saint of the Roman Catholic religion is being used to exploit her local charities and benevolences as a pretext to establish a religious shrine or place of worship, or for the propagation of the Catholic religion; or that the same could readily be used for such purpose. To the contrary, the statue is a modest one of simple proportions, erected in her honor by her proud coreligionists, and accepted by a grateful city in memoriam, all without cost or expense to the City. The monument so erected and dedicated is not for a private or selfish interest, but serves a public purpose and is a public benefit. Such a statue helps deepen within those who see it the consciousness of the obligation they owe the needy and friendless, and encourages them to mould their characters and deeds that their lives, too, may be counted a blessing.
"It is true that the intervening ministers object to Mother Cabrini's portrayal as a saint with her arms stretched in supplication, but this objection is more religious than legal.
"The complainants argue that the Attorney General of Louisiana has given an opinion that a plaque dedicated by a fraternal, organization (Woodmen of the World) in memory of its members who made the supreme sacrifice in World War II, could not be placed on a public building in Lafayette. To do so, he said, would be using public property for private purposes, and that if one fraternity did it, all might do it, which could result in public buildings being overrun with such plaques. This Court cannot fully agree with the Attorney General. No individual or private association has the right to erect a memorial on public property without the consent of the governing authorities. If a member of any particular organization is a public figure and worthy of public acclaim, there is no reason why the local governing authorities cannot permit such organization to erect a suitable memorial on public property and *245 attach thereto some inscription or legend of his membership therein.
"If any community in Louisiana has too many heroes to honor, or if memorial plaques should become plagues on its public buildings, the local authority could require their removal and prohibit their future erection.
"The opinion of the Attorney General was offered as evidence of contemporary construction of a public official of the constitutional prohibition against use of public property or funds for private purposes. The Court's appreciation of the rule of contemporaneous construction is that, when a statute or constitutional provision is ambiguous and subject to several interpretations, the Court will accept the interpretation of those officials charged with the administration and enforcement of such law over a long period of time. The recent construction of the law in an opinion given by the Attorney General to a public body seeking his advice is not the contemporaneous construction that would take precedence over the contemporaneous construction of the public officials of the City of New Orleans who, under the constitutions of 1879, 1898, 1913 and 1921, have erected or permitted to be erected statues or monuments to its illustrious dead and public benefactors, regardless of faith or creed.
"The contention that the inscription on the statue refers to Frances Xavier Cabrini in her capacity of a saint rather than to her public charities, etc., might give cause for the change of the inscription, not for the removal of the statue. The nature of the inscription, once a statue can be legally erected on public property, is a matter that is within the sound discretion of the City authorities, with which a court should not interfere, unless it is abused. I can find no such abuse.
"Suggestion is made by complainants that since Mother Cabrini's public charities and benevolences, if any, were confined to a restricted section of the City (Vieux Carre) and particularly among Italian immigrants, and did not extend to the Lakeview section, the statue to her does not belong in that section. The evidence shows that while her benefactions and charities were principally in the Vieux Carre and among the Italian people, they were not confined there, nor were they confined to any particular faith or creed.
"The question is whether the City had the right to erect or permit the erection of the statue to Mother Cabrini. Once that is answered in the affirmative, the location of the statue rests within the sound discretion of the City authorities. This Court cannot interfere nor substitute its opinion or that of a taxpayer or group of taxpayers for that of the City authorities.
"Mother Cabrini's acts were testified to by living witnesses who were either the recipients of, or participants in, her benefactions, corroborated by clippings from local newspapers at a time unsuspicious. While newspaper accounts are generally inadmissible as hearsay, except to impute knowledge, the newspaper accounts here were corroborated by living witnesses. Current events of public interest are reported in the newspapers, which is usually the only source from which the public gains knowledge of such events. The history of most communities would never be recorded or preserved except for its newspapers and periodicals.
"It is argued that Mother Cabrini was not born in New Orleans and was not a resident, and that she only made infrequent visits to the City of New Orleans, as she did to other American cities. The test is not whether she was born or lived here that stamps her as a public figure, but whether she contributed anything of substantial value to the public interest and welfare. One could be a public benefactor of this community without ever having been here, while one could be born and die here without ever having contributed anything of value to the public interest or welfarehealth, safety or morals. `Full many a flower is born to blush unseen, and waste its sweetness on the desert air.'
"The Court is not unmindful that we must ever be vigilant in maintaining the American principle of separation of church and state; and that minorities must ever be protected against majorities in the preservation of constitutional guarantees *246 with respect to the freedom of religion and worship, because the majorities of today may be the minorities of tomorrow.
"This litigation, whether one considers it unkind or intolerant, nevertheless emphasizes our freedom of thought and religion. When there is a legal contest prosecuted by some of the Protestant faith to remove a public statue dedicated to one of the Catholic faith of high rank, tried in a court of law presided over by a judge of the Jewish faith, we may well know that Democracy is still hard at work.
"In summation, I review and conclude the issues as follows:
"(1) Can the City of New Orleans legally erect, or permit the erection of, a statue or monument to an individual or group of individuals, and not violate the constitutional guarantees?
The answer is, yes. It is traditional for American municipalities to erect monuments at public expense and on public property in honor of, and in memoriam to, those who have contributed to the public welfare and interest, either militarily, scientifically, socially or morally. The City of New Orleans, under each of our State Constitutions from 1879 through the present Constitution of 1921, with the same constitutional provision prohibiting the use of public property for private purposes, has honored its public heroes and benefactors. Monuments, markers, statues or plaques stand in public places in every section of the City honoring them.
"(2) Is Frances Xavier Cabrini, now canonized as Mother Cabrini, a public figure who contributed to the welfare of the people of the City of New Orleans?
"The answer is, yes. She inspired, supervised and was active in aid and succor of the poor and orphan, the sick and the afflicted. She inspired and caused to be established institutions for the care of the orphan and afflicted. The fact that she did this as a member of a religious order (Missionary Sisters of the Sacred Heart) does not stamp her activities as religious, because her charities and benevolences were without regard to race, creed or religion.
"(3) Once it is established that the object of the statue is a public figure, does a taxpayer or the Court have a right to determine the location of such a statue, or the manner of its erection, or its design and inscription?
"The answer is, no. The location, the manner and design of such a statue is within the sound discretion of the governing authorities of the City of New Orleans, and the Court has no right to substitute its opinion or discretion for theirs.
"(4) Does the fact that the person so honored as a public figure is a member of high standing of any particular church, and is depicted in the garb of that particular faith, deny his or her right to be honored?
"The answer is, no. That to deny the right of the City to erect a statue to a public figure solely because of the honoree's religion, whatever rank he or she may have in his or her particular church, would be to violate the constitutional mandate that there shall be no discrimination against anyone because of his race or religion.
"The only restriction against the City is that it cannot discriminate. That any statue or monument might incidentally have some religious significance cannot be held violative of the constitutional prohibitions, unless it was designed and used as a public shrine or place of worship, or for the propagation of a religious belief; or was intended to hold some other religious group in public contempt and ridicule; or designed to cause religious strife and antagonisms.
"(5) Does the fact that the person honored appears in a religious garb and has her hands extended forward in supplication make it illegal?
"The answer is, no. If the honoree performed her charities and benevolences in that garb, it is that garb in which she is better known and recognized. In any other garb she would be a stranger. Soldiers and religious figures are usually depicted in the uniform or garb in which they performed their public deeds of valor or benevolence. That the statue shows the honoree with her hands raised in supplication would lead me, a non-Christian, in *247 view of the evidence of her benevolences and work among the poor and the orphan, to interpret it as: `Suffer little children to come unto me, for of such is the Kingdom of Heaven.'
"(6) Would the fact that the honoree was not a native or full-time resident of New Orleans deny her status as a public character?
"The answer is, no. The status of a public character is determined by whether or not such person has contributed to the public welfare, either charitable, social, scientific, health, or otherwise. Many people are born to die in the City without having contributed anything to its welfare, while a perfect stranger may be a great benefactor."
The reasons, it seems to us, fully encompass a discussion on all issues raised below. However, we feel that some comment should emanate from us on certain portions of the argument advanced in this court by appellants.
Counsel for relator, both in brief and argument, relied heavily upon the construction placed on Article IV, § 12, of the 1921 Constitution by the attorney general in an opinion rendered on December 16, 1949, in which it was ruled that a police jury may not legally permit a fraternal order to erect on a courthouse lawn a memorial tablet to military veteran members of the organization. The attorney general's conclusion was that no matter how laudable the purpose police juries are not authorized to donate public funds or property to fraternal organizations, religious sects, or private corporations in contravention of the said article of the Constitution. We think that the trial judge was correct in disregarding the attorney general's opinion for the reasons assigned. An opinion of the attorney general has no judicial significance or force, and the most that could be said of it is that in some instances it may be persuasive. See Labit v. Terrebonne Parish School Board, La. App., 49 So.2d 431.
Much of the argument was devoted to the contention that the part of the inscription which reads "Erected August 25, 1949 by the Order of the Alhambra During its 23rd Biennial Convention" is an aggrandizement or advertisement of the order, and that the use of public property by a private organization for such purposes is contrary to the constitutional provision.
It cannot be questioned that a municipality may permit the erection of statues and memorials in public places, whether they be purely ornamental or include the idea of a memorial. 64 C.J.S., Municipal Corporations, § 1820, p. 304. Nor can it be denied that a municipality is legally authorized and has the capacity to receive and accept gifts of funds or property, including statues and memorials. This being so, the City of New Orleans, acting through its governing authority, had the right to accept the gift of a statue memorializing a person, who the record shows, had been a local benefactress of citizens of this community. As pointed out by the trial judge, the city abounds with such memorials, and from photographs in the record we notice that some carry the name of the donor. We know of no reason, in the case of the memorial to Frances Xavier Cabrini, which was donated to the City of New Orleans and formally accepted by its Commission Council, why the name of the donor is inhibited from appearing under the name of the honoree thereon.
The judge below correctly disposed of the contention, as it was presented to him, that the statue is of a religious nature. But in this court, in furtherance of his contention, counsel cites certain language used in a volume which is said to contain the canon law of the Roman Catholic Church. We need not concern ourselves with this phase of the argument, as neither the authenticity of the volume said to contain the canon law, from which counsel quoted, has been proved, nor is the volume itself a part of the evidence in the case. We cannot judicially notice what is the canon law of the church in question, or for that matter of any other church.
For the reasons assigned, the judgment appealed from is affirmed.
Affirmed.