Dear Senator Ewing:
You have requested an opinion of the Attorney General regarding the tax exempt status of a business located within a lawfully designated Rural Enterprise Zone. You specifically ask whether the contract between Stone Hodge, Inc. ("Stone") and the Louisiana Board of Commerce and Industry ("LBCI"), effective December 13, 1989, affords Stone an exemption from sales and use taxes levied by the Jackson Parish School Board ("Board").
The statutes comprising the Louisiana Enterprise Zone Act ("Act") are found at LSA-R.S. 51:1781-1790. The purpose of the Act is to stimulate business and industrial growth in depressed areas of the state through, among other things, tax incentives. Section 1786 provides that the Department of Economic Development ("DED") shall administer the statutory provisions of the Act. It further grants DED the power to promulgate rules and regulations to effectuate the Act's provisions, in accordance with the Administrative Procedures Act.
Section 1787(C) authorizes the Board to enter into contracts with businesses locating within a Rural Enterprise Zone (i.e., within a parish having a population not in excess of fifty thousand people). Prior to its amendment in 1989, it provided, in pertinent part, the following:
 "C. The board, after consultation with the secretaries of the Department of Commerce and Department of Revenue and Taxation, and the the approval of the governor, may enter into contracts to provide:
 (1) For the exemption from sales and use tax imposed by the state of Louisiana or from sales and use tax imposed by its political subdivisions upon approval of the governing authority of the appropriate municipality or the appropriate parish where applicable, or both, of the purchases of the material used in the construction of a building, or any addition or improvement thereon, for housing any legitimate business enterprise, and machinery and equipment used in that enterprise." (Emphasis added.)
Subsequent to its amendment by Act No. 492 of the 1989 Regular Session of the Louisiana Legislature, Section 1787(C) provided, in pertinent part:
 "C. The board, after consultation with the secretaries of the Department of Economic Development and the Department of Revenue and Taxation, and with the approval of the governor, may enter into contracts to provide:
 (1) For the rebate of sales and use tax imposed by the state or imposed by its political subdivisions, upon approval of the governing authority of the appropriate municipality or the appropriate parish where applicable, or both, of the purchases of the material used in the construction of a building, or any addition or improvement thereon, for housing any legitimate business enterprise and machinery and equipment used in that enterprise." (Emphasis added.)
A contract was entered into pursuant to Section 1787(C) between Stone and LBCI. Its preamble and Article VI provide that the State shall rebate to the Contractee sales and use taxes imposed by the State and its political subdivisions, as allowed by law, upon approval of the governing authority.
Stone takes the position that both of the statutory provisions quoted above refer to sales and use taxes "imposed by its [the state's] political subdivisions," and since the term "political subdivision" is defined in Article 6, Section 44(2) of the 1974 Louisiana Constitution to mean ". . . a parish, municipality, and any other unit of local government, including a school board and a special district, authorized by law to perform governmental functions," the Board is required to rebate taxes Stone paid.
Initially, it should be noted that the statutory language, in question, contains no definition of the term "political subdivisions." Further, the definitions appearing in Article 6, Section 44 are prefaced by the introductory language "As used in this Article." There is no suggestion in Section 44 or the provisions of the Act that the term "political subdivision" as used in the Act must be accorded the constitutional definition.
Stone concedes that informal guidelines existed at the time its contract was confected which precluded the rebate of school board taxes. This is confirmed by representatives of LBCI, as enunciated in a memorandum from Ed Baker, Coordinator, Enterprise Zone Program, dated February 22, 1993, attached. It states, in pertinent part:
 "The policy of the Department of Economic Development and the Board of Commerce and Industry has always precluded the refunding of Sales and use taxes levied by a School Board. This is the Policy which every Board of Commerce and Industry has adhered to since the beginning of the Enterprise Zone program."
Assuming the laws comprising the Act in 1989 were ambiguous, the interpretation adopted by those charged with its administration over a long period of time must be accorded great weight. State ex rel. Singlemann v. Morrison, 57 So.2d 238
(La.App. Orl. Cir. 1952), Writ Denied.
The issue presented herein has been previously addressed by the Attorney General in Opinion No. 83-471. While the Enterprise Zone in question was an urban zone, the statutory language at issue is identical to the language under discussion herein. In response to the question, "Does the term governing authority also apply to a school board?", the author concluded:
 "A school board is a political subdivision, but it is not a "governing authority" for the purposes of R. S. 51:1781 et seq. R.S. 51:1787
regarding Incentives, provides in pertinent part:
 `A. The board, after consultation with the secretaries of the Department of Commerce and Department of Revenue and Taxation, and with the approval of the governor, may enter into contracts to provide:
 (1) For the exemption from sales and use tax imposed by the state of Louisiana and from sales and use tax imposed by its political subdivisions upon approval of the governing authority of the appropriate municipality or the appropriate parish where applicable, or both, of the purchases of the material used in the construction of a building, or any addition or improvement thereon, for housing any legitimate business enterprise, and machinery and equipment used in that enterprise.'
 Although the above-quoted statute mentions political subdivision, it specifically provides that the `governing authority' of the appropriate municipality or the appropriate parish or both may enter into contracts to provide sales tax exemptions for a business enterprise. The statute makes no such provision for school boards to enter into such contracts; moreover, there is nothing in the context of the Enterprise Zone Act to indicate that `governing authority' refers to a school board."
Opinion No. 83-471 was subsequently discussed in Opinion No. 86-563. Therein, the author acknowledges that the power to tax is vested in the legislature. The author further recognizes that the state, when following the procedures outlined in the Act, as it existed in 1986, may exempt an industrial enterprise zone from sales and use taxes imposed by school boards. However, as previously noted, the state, through LBCI, has historically elected to exclude school board taxes from the exemptions and/or rebates. While LBCI might have codified its interpretation through the adoption of formal rules and regulations, their failure to do so does not, in our opinion, lead to the conclusion that LBCI's interpretation has been invalid.
Act 928 of the 1991 Regular Session of the Louisiana Legislature amended LSA-R.S. 51:1787(C). One of its purposes was to clarify exactly which local taxes qualify for rebate. The legislature substituted the phrase "local governmental subdivisions" for "political subdivisions." The use of the phrase "local governmental subdivisions" appears to reference the definition contained in Article VI, Section 44(1) which defines the term to mean any parish or municipality. LBCI also published on March 20, 1991, rules in the Louisiana Register which state that school taxes are not subject to rebate.
A review of the House Commerce Committee's written minutes and the tape of those proceedings reflect Representative LaBorde's statement that:
 "The bill clarifies that when referring to a political subdivision, it is only referring to local governmental subdivisions." (Emphasis Added.)"
Stone further takes the position that a retroactive application of this legislation to its contract would violate Article I, Section 23 of the Constitution. It provides:
 "Section 23. No bill of attainder, ex post facto law, or law impairing the obligation of contracts shall be enacted."
While the prohibition of the Contract Clause against laws retroactively impairing contracts enjoys general applicability, it is not absolute. Although the Contract Clause appears literally to proscribe "any" impairment, the United States Supreme Court observed in Home Building and Loan Association v. Blaisdell, 90 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934), that "this prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."
This same Court observed that the states must possess broad power to adapt general regulatory measures without being concerned that private contracts will be impaired, or even destroyed as a result. Otherwise, one would be able to obtain immunity from the state regulation by making private contractual arrangements. This principle is summarized in Mr. Justice Holmes' well known dictum: "One whose rights, such as they are, are subject to state restriction, and cannot remove them from the power of the State by making a contract about them." See Hudson Waters Co. v. McCarter, 209 U.S. 349, 28 S.Ct. 529,52 L.Ed. 828 (1908).
The test for the constitutionality of a law impairing the obligation of the state or its political subdivision under the federal contract clause is set forth in United States Trust Co. of New York v. New Jersey 431 U.S. 1, 97 S.Ct. 1505,52 L.Ed.2d 92 (1977);
 "The Contract Clause is not an absolute bar to subsequent modification of a State's own financial obligations. As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose."
Louisiana law is in accord. The Louisiana Supreme Court in City of Shreveport v. Curry, 357 So.2d 1078 (1978), has defined the police power reserved by Article VI, Section 29 of the Louisiana Constitution to be:
 "Police power is the power of a governmental body to regulate reasonable the actions of its individual citizens in order to protect or promote the public health, safety, morals, peace or general welfare."
Assuming, arguendo, that the collection of the Board's sales tax from Stone without a rebate constitutes a retroactive impairment of the obligation of the Stone contract, we believe this impairment is, nevertheless, constitutional.
The tax, in question, funds not only teachers' salaries, but also offsets expenses related to the operation and maintenance of parish schools. The education of our children clearly constitutes the exercise of the police power of the Parish of Jackson in its most fundamental sense — to promote the public morals and/or general welfare. Accordingly, the levy of a sales tax to fund the operation of the parish schools is incidental and integral to this exercise of the police power.
For the above and foregoing reasons, it is the opinion of this office that the contract between Stone and LBCI does not provide for an exemption and/or rebate of sales and use taxes levied by the Jackson Parish School Board. Alternatively, even if it does, the contract may be constitutionally impaired by the levy of the tax in that it is a reasonable exercise of the police power to promote public morals and/or general welfare.
Trusting this answers your question, I am,
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0057R