Dear Mr. Stokes:
You have requested an opinion of the Attorney General regarding the Pine Belt Multi-Purpose Community Action Agency, Inc. (Agency), a non-profit corporation. You specifically ask whether the Agency is exempt from the payment of state, local, and parish sales taxes under Act 1029 of the 1991 Regular Session of the Louisiana Legislature (Act).
The Act amends and reenacts LSA-R.S. 47:301(8)(a) and (c) relative to the definition of the term "person", so as to exclude from the payment of sales taxes the "state, any parish, city and parish, municipality, district, or other political subdivision thereof, of any agency, board, commission, or instrumentality of this state or its political subdivisions".
It is axiomatic that tax exemption statutes must be strictly construed against the person claiming them. The test to be applied in resolving this issue was previously enunciated by this office in Attorney General Opinion No. 92-139. As noted therein, your request must be considered in light of judicial decisions which have determined whether an entity is considered purely public or private.
In Audubon Park Commission v. Board of Commissioners for the Port of New Orleans, 153 So.2d 574 (La.App. 4th Cir. 1963), the court discussed the relationship between the Audubon Park Commission, created by special act of the legislature, and the Audubon Park Natatorium, Inc., a private non-profit corporation created by the Commission. The corporation was created to lease and operate the swimming pool and concessions in Audubon Park. Private shareholders subscribed to 500 shares of preferred stock, with the Commission having the right to redeem all of the preferred stock. The corporation subsequently retired the preferred stock which vested sole ownership of the Natatorium in the Commission. The Commission and the Corporation were controlled by the same persons, since a majority of the Commission's board also served and formed a majority of the corporation's directorate. The corporation functioned primarily as a purchasing agent for the Commission, and always acted at the instigation of the Commission.
The court found that the Commission created and used the corporation for the purpose of attaining objectives which the Commission, as a public corporation, was not authorized nor permitted to accomplish. The court further found that the Commission exceeded its authority in creating the corporation; however, the corporation existed de facto. The court cited C.C. Art. 429, since repealed, and found that the corporation was not a public corporation because it was not an entity "to whom a part of the powers of government is delegated to that effect". The court stated that if they were to find that the corporation was public it would lead to an "absurd result such as would permit a public corporation or agency to delegate powers to a private corporation in excess of those initially granted to the public corporation by the legislature".
The court in Audubon Park Commission, supra, also quoted from Kerr v. Enoch Pratt Free Library, 54 F. Supp. 514 (D.C. 1944) as follows:
 " * * * The legal test between a private and a public corporation is whether the corporation is subject to control by public authority, state or municipal. To make the corporation a public one, its managers, whether trustees or directors, must be not only appointed by public authority, but subject to its control * * * "
In National Bank of Commerce in New Orleans v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, 206 La. 913, 20 So.2d 264 (1944), the court discussed whether the State University Board of Supervisors is a "public board" and a "political or public corporation" and quoted from "Corporations", 7 R.C.L., Section 14, page 40 as follows:
 "The distinction between public and private corporations has reference to their powers and the purposes of their creation. They are public when created for public purposes only, connected with the administration of the government and where the whole interests and franchise are the exclusive property and domain of the government itself."
Clearly, the Agency does not constitute the "state, any parish, city and parish, municipality, district or other political subdivision". Thus, if it is to be exempt from the payment of state and local sales taxes, it must constitute an "agency, board, commission, or instrumentality of this state or its political subdivisions".
With the aforementioned jurisprudential guidelines in mind, this office concluded in Opinion No. 92-139 that a corporation (LGH) formed to lease a hospital facility, which it operated, from a public entity (LPBC) constituted an "agency, board, commission, or instrumentality" of Lincoln Parish. As such, it was exempt from the payment of sales and use taxes under Act 1029.
In reaching this conclusion, the author noted the following:
 "Pursuant to the Sublease, LGH agrees that it will only engage in the business of treating the sick, and that all its funds will be used exclusively for that purpose. LGH can only buy or sell real property if its use is restricted to health care, and it must obtain LPBC's consent before doing so (Para. 3.2). LGH is required to make its records available for public inspection in accordance with the state Public Records Law, `as if the Lessee were a public body' (Para. 4.4). LGH's Board meetings must be conducted in accordance with the state Open Meetings Law (Para. 4.5). LGH must obtain LPBC's written permission before purchasing replacement equipment costing in excess of $5,000.00, and LGH is also required to comply with the state Public Contract and Bid Laws (Para. 5.6). Upon termination of the Sublease, LGH must convey all of its property and assets `to the Lincoln Parish Police Jury', except to the extent necessary to satisfy its contingent liabilities (Sec. X). LGH is also required to maintain a "Liaison Committee' of Directors, who `shall meet regularly' with an LPBC committee for the purpose of maintaining open lines of communication between the public, LPBC, and LGH. The committees `will' discuss all problems relating to hospital operations, future plans and all other matters regarding the health care and needs of the citizens of the parish and the surrounding area (Sec. XII). The Sublease also contains extensive provisions regarding the election of LGH's Board of Directors and the appointment of its officers (Commencing with election of April 27, 1988), and LPBC is given extensive input in that nomination and selection process."
In the case at hand, the Agency was designated to be a community action agency by the appropriate parish governing authorities in accordance with LSA-R.S. 23:61, et seq. The Agency administers a community action program which provides services, assistance, and other activities of sufficient scope to give promise of progress toward the elimination of poverty within the community it serves.
The Agency's Articles of Incorporation reflect that it is organized without capital stock and operated exclusively for charitable, educational, and scientific purposes. LSA-R.S. 23:64
provides for a governing board for the Agency of between 15 and 31 members. One-third of the members are elected public officials currently holding office in the geographical area to be served. The remaining two-thirds of the members are equally divided between individuals with low income and members of business, labor, religious, welfare, education, or other major groups or interests in the community.
LSA-R.S. 23:63 and the Agency's Articles vest the Agency with extremely broad powers which the state and/or its political subdivisions are not authorized nor permitted to exercise. Thus, for example, the Agency may assist program participants to "undertake family planning consistent with personal and family goals, and religious and moral convictions". Article III authorizes the Agency to "receive and hold all manner of land, tenements, rents, . . . and any land bequeathed unto it or acquired by it in any manner; respectfully to hold, own, manage, operate, lease, convey, invest and dispose of by gifts, sale, lease or otherwise such property . . . . "
Article XVI provides that, upon its dissolution, the Agency's assets may be distributed to a suitable charitable, governmental, or educational organization, except to the extent necessary to satisfy any outstanding expenses and indebtedness.
Applying the law and jurisprudence discussed herein, we find that, while the Agency is subject to oversight by the state, it is not subject to the degree of control necessary to constitute a public corporation. This is evidenced by the fact that its governing board is not appointed nor under the control of a state or local public authority. Kerr v. Enoch Pratt Fee Library, cited supra. We further find that the Agency's interests and franchise are not the exclusive property and domain of the government itself. National Bank of Commerce in New Orleans v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, cited supra.
Further, we have been advised by representatives of the Louisiana Department of Revenue, Sales Tax Division, that, under the Department's rules and regulations, the Agency is not considered exempt from the payment of state sales and use taxes. It is axiomatic that the interpretation of statutory provisions by those charged with their administration or enforcement is accorded great weight. State ex rel. Singelmann v. Morrison,57 So.2d 238 (La.App. Orl. Cir. 1952), Writ denied.
Accordingly, it is the opinion of this office that the Pine Belt Multi-Purpose Community Action Agency, Inc., does not constitute an agency, board, commission, or instrumentality of the state or its political subdivisions. It is, therefore, not exempt or excluded from the payment of state, local, and parish sales taxes.
Trusting this adequately responds to your requests, I am
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: ROBERT E. HARROUN, III Assistant Attorney General
RPI/ROB3/bb 0203R