STATE EX REL. REYNOLDS, Attorney General, Petitioner, v. NUSBAUM, Commissioner, State Department of Administration, Respondent.

*May 4—June 5, 1962.*

151

For the petitioner there was a brief by *John W. Reynolds,* attorney general, *William A. Platz* and *James H. McDermott,* assistant attorneys general, and oral argument by *Mr. Reynolds* and *Mr. Platz.*

For the respondent there were briefs by *Marvin E. Klitsner, Thomas Ehrlich, David H. Fleck,* and *Foley, Sammond*

& *Lardner,* all of Milwaukee, and oral argument by *Mr. Klitsner* and *Mr. Ehrlich.*

A brief *amicus curiae* was filed by *Charles J. Kersten* of Milwaukee, for the Citizens for Educational Freedom.

A brief *amici curiae* was also filed by *Floyd A. Brynelson,* attorney, and *Griffin G. Dorschel* of counsel, both of Madison, for Winslow Wilson and others.

CURRIE, J. Prior to the amendment of sec. 40.53 (1), Stats., by ch. 648, Laws of 1961,[1] this statute required that

---

[1] Ch. 648, Laws of 1961, reads:

"Section 1. 40.53 (1) of the statutes is amended to read:

"40.53 (1) SCHOOLCHILDREN. Except as provided in sec. 40.55, the school boards of all school districts . . . shall provide transportation *only* to and from *the public* school *which they are entitled to attend,* for all pupils, *attending public and nonpublic schools,* residing in the district, *on regular routes approved for the public school bus* and two miles or more from the nearest public school they may attend *within said district.* Such school boards may provide transportation for teachers to and from school subject to the same controls and limitations as are provided by this section for the transportation of pupils. In districts operating high schools, the board may also provide transportation for nonresident public high school pupils residing two miles or more from the school within areas served by the school by bus routes approved by the county school committee and the state superintendent. If the district operating the high school does not provide transportation for nonresident high school pupils, the municipality in which the nonresident pupils reside shall arrange for such transportation and such municipality shall make claim to the county clerk for the cost of transportation so provided in the manner specified in sec. 40.56 (2). The annual or special school meeting of any school district . . . , or if no such meeting is held, then the school board of any such district may authorize the transportation of all or any part of the pupils of such school district *to and from the public school within the district which they are entitled to attend,* but if such transportation is furnished to less than all of the pupils there shall be reasonable uniformity in the minimum distance that pupils will be transported. The board of any public elementary school district which has suspended school shall provide transportation to and from school for all elementary pupils residing therein, and two miles or more from the nearest district

school boards operating public elementary or high schools provide transportation to and from school for all pupils residing in the district two or more miles from the nearest public school they might attend, subject to the exception contained in sec. 40.55. Sec. 40.55 provides that secs. 40.53, 40.54, and 40.56 shall not apply to pupils who reside in cities, except that, if a city determines to furnish transportation on an optional basis, the same state aid shall be allowed as is provided by sec. 40.56. Because of the adoption of ch. 648, certain pupils attending approximately 500 nonpublic schools will be entitled to free transportation to and from the nearest public school they are entitled to attend.

school which they may attend, or two miles or more from any other district school which in the opinion of the state department of public instruction it is more feasible for them to attend.

"Section 2. 40.56 (3) of the statutes is amended to read:

"40.56 (3) School districts and municipalities which furnish transportation to and from a public school as provided in sec. 40.53 are entitled to receive state aid on account of such transportation at the rate of $24 per school year per pupil transported to and from school whose residence is at least two miles and not more than five miles by the nearest traveled route from the public school . . . *which they are entitled to attend* and $36 per school year per pupil transported to and from school whose residence is more than five miles by the nearest traveled route from the public school attended. Such aids shall be reduced, proportionately, in the case of pupils transported for less than a full school year because of nonenrollment. Transportation aid to any district . . . shall not exceed the actual cost of transportation to the district or municipality. No state aid of any kind shall be provided to any district which after July 1, 1949, charges any part of the cost of the transportation furnished under sec. 40.53 against the pupils transported, their parents or guardians, nor shall any state aid of any kind be provided to any district which fails to transport all of the pupils attending the district's school and whose transportation is required under sec. 40.53. *Such aids shall not be contingent upon the pupils attending public school.*

"Section 3. This act shall take effect July 1, 1962."

(The italicized words indicate those words which were inserted into secs. 40.53 (1) and 40.56 (3), Stats., for the first time by ch. 648, Laws of 1961. The ellipses indicate deletions.)

The new enactment presents a question of statutory interpretation as to whether the phrase "on regular routes approved for the public school bus," in the law as amended, relates back to the word "transportation" or whether it refers to the immediate antecedent phrase having to do with the residence requirement. To interpret the statute as requiring actual residence on the bus routes would lead to the absurd result that public school pupils who, prior to the passage of ch. 648, had walked to the bus routes, or had been transported there by their parents, would no longer be entitled to free bus transportation to and from school. It is a cardinal rule of statutory interpretation that an absurd result is to be avoided if possible. *Wisconsin Valley Improvement Co. v. Public Service Comm.* (1960), 9 Wis. (2d) 606, 615, 101 N. W. (2d) 798; *Connell v. Luck* (1953), 264 Wis. 282, 284, 285, 58 N. W. (2d) 633. Therefore, we construe the statutory phrase "on regular routes approved for the public school bus" as not requiring actual residence on the routes themselves of either the public or nonpublic school pupils who are to be entitled to free transportation under the amended statute. This interpretation also obviates the necessity of passing upon a denial-of-equal-protection-of-the-laws argument advanced by respondent.

In addition to the denial-of-equal-protection-of-the-laws contention thus resolved, respondent advances further reasons why ch. 648 should be held invalid as violating various provisions of the United States and Wisconsin constitutions. However, we find it unnecessary to consider any of these except that which asserts that this enactment violates that clause of sec. 18, art. I, Wisconsin constitution,[2] which pro-

[2] Article I. *Section 18.* "The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect, or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by

vides: ". . . nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."

We construe "religious societies" to be synonymous with religious organizations, and, under the stipulated facts, practically all of the nonpublic schools, whose pupils are to be transported under the attacked act, are operated by religious organizations. Furthermore, at the time of the adoption of our constitution in 1848, the word "seminaries" was synonymous with academies or schools. *State ex rel. Weiss v. District Board* (1890), 76 Wis. 177, 215, 44 N. W. 967. Other courts have held that the term "seminary" includes primary and secondary schools. *County of Hennepin v. Grace* (1881), 27 Minn. 503, 8 N. W. 761; *Sisters of Mercy v. Hooksett* (1945), 93 N. H. 301, 42 Atl. (2d) 222. Therefore, inasmuch as some religious instruction is given in all of the approximately 500 nonpublic schools operated by religious organizations or sectarian groups, certain of whose pupils are to be transported under the act, these parochial schools constitute "religious seminaries" within the meaning of sec. 18, art. I, Wisconsin constitution.

Because 60 percent of these approximately 500 parochial schools located without the boundaries of cities are situated within distances which do not exceed one-half mile from public schools, it is fair to assume that a considerable number of pupils attending these schools will be afforded transportation under the new act if its validity is upheld. Those parochial schools, which now pay part or all of the cost of transportation of their pupils out of their school funds, stand to benefit financially by the operation of the new act. Others stand to gain through increased enrollment. Such an increase of enrollment is a benefit to these parochial schools. *Judd v.*

law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."

*Board of Education* (1938), 278 N. Y. 200, 212, 15 N. E. (2d) 576, 118 A. L. R. 789; *Visser v. Nooksack Valley School Dist.* (1949), 33 Wash. (2d) 699, 708, 207 Pac. (2d) 198. We quote with approval this statement of the New York court of appeals in the *Judd Case* (p. 212):

"Free transportation of pupils induces attendance at the school. The purpose of the transportation is to promote the interests of the private school or religious or sectarian institution that controls and directs it. 'It helps build up, strengthen, and make successful the schools as organizations' (*State ex rel. Traub v. Brown,* 36 Del. 181, 187, writ of error dismissed, February 15, 1938). Without pupils there could be no school. It is illogical to say that the furnishing of transportation is not an aid to the institution while the employment of teachers and furnishing of books, accommodations, and other facilities are such an aid."

Therefore, the crucial question is whether the benefits which parochial schools would receive under the act are of a category to constitute a violation of sec. 18, art. I, Wisconsin constitution.

It must be conceded that there are benefits to religious organizations and parochial schools resulting from the expenditures of public funds which are not a violation of this constitutional prohibition. Examples are the providing of police and fire protection, the supplying of water and sewerage services on a basis whereby all the cost of the system or service is not charged to the users, and the building or improving of public sidewalks and streets. However, all of these public services and facilities are provided to the public, or to property, generally on a basis whereby no classification is made as to religious organizations or schools. It is this which distinguishes these benefits from those sought to be conferred by the instant act. Mr. Justice JACKSON pointed out this line of demarcation in his penetrating dissenting opinion in *Everson v. Board of Education* (1947), 330 U. S.

1, 25, 67 Sup. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392, in these words:

"A policeman protects a Catholic, of course—but not because he is a Catholic; it is because he is a man and a member of our society. The fireman protects the church school—but not because it a church school; it is because it is property, part of the assets of our society. Neither the fireman nor the policeman has to ask before he renders aid, 'Is this man or building identified with the Catholic Church?'"

Professor Philip B. Kurland in his article, Of Church and State and the Supreme Court, 29 University of Chicago Law Review (1961), 1, draws this same line of demarcation, as did Mr. Justice JACKSON, in considering the freedom of religion and establishment of religion clauses of the First amendment to the United States constitution. Kurland states his conclusion thus (p. 96):

"The freedom and separation clauses should be read as stating a single precept: That government cannot utilize religion as a standard for action or inaction because these clauses, read together as they should be, prohibit classification in terms of religion either to confer a benefit or to impose a burden."

It is apparent from the stipulated facts that while ch. 648 is so worded as to provide transportation to private schools generally, the private schools which stand to benefit from the act are the parochial schools. This is because of the 10 private schools in the state furnishing grade and high school education, five are located in cities in which the providing of public transportation is optional and the other five have most of their pupils in residence at their schools. Thus, the benefit conferred is in reality one confined to those religious groups which operate parochial schools.

There are, however, other valid statutes which benefit religious organizations, rather than the public generally.

Perhaps the most-prominent example is the exemption from taxation of religious organization or parochial school property in sec. 70.11 (4), Stats. While the constitutionality of this and analogous provisions, under sec. 18, art. I, Wisconsin constitution, is not before us, we deem it important to point out the distinction from the instant situation. This distinction is that the exemption afforded by sec. 70.11 (4) is not expressly or effectually restricted to religious organizations, as many other nonprofit organizations benefit from it. Thus, this tax exemption does not transcend the religious-classification prohibition.

We have also given consideration to whether the benefits, conferred by ch. 648 upon parochial schools, differ in kind from the situation where parochial school pupils are permitted to attend certain specialized courses in the public schools. For example, it has been brought to our attention that pupils of certain parochial schools attend manual-training and domestic-science classes in the public schools. These parochial schools benefit in that they are saved the expense of providing the specialized equipment required for such courses, and of securing teachers trained to teach the same. However, let us assume but not decide that permitting children, who satisfy the age and residence requirements, to secure part of their education in the public schools, even though at the same time they may be in attendance at parochial schools, does not violate sec. 18, art. I, Wisconsin constitution. On this hypothesis it might be argued that permitting parochial school children to take advantage of transportation by public school bus, is a use of public school facilities equivalent to attendance at manual-training and domestic-science classes in the public schools. However, the essential difference, from a constitutional standpoint, is that riding school buses is not an educational objective of the state in itself, but merely an instrumentality to bring the pupils to the public schools where they will secure a public education.

Under ch. 648, parochial school children are not to be transported to the public schools for the purpose of receiving any public instruction; rather, such transportation is merely a convenience to assist them in attending a parochial school.

One further argument needs mentioning on the issue of whether ch. 648 would benefit parochial schools in a manner prohibited by sec. 18, art. I of the Wisconsin constitution. This is that the providing of transportation to parochial school pupils entails no more expenditure of public funds than would be required if these pupils were to attend public schools. However, this same argument would sustain the use of public funds to pay salaries of parochial school teachers or other direct operating expenses of such schools. Considering the objective sought by the framers of our state constitution in including the provisions of sec. 18, art. I, we are certain that the determination of whether religious schools receive a prohibited benefit from public funds is not dependent on whether the overall cost to the public treasury would be less or greater by reason of the operation of such schools than would be the case if all the pupils thereof were to attend public schools.

The legislature, in enacting ch. 648, entitled it, "An Act to amend 40.53 (1) and 40.56 (3) of the statutes, relating to the safety and welfare of all school pupils in the state." The attorney general argues that this act is sustainable on the basis that the transportation of parochial school pupils would promote their health and welfare. It could also be argued with equal plausibility that a direct grant in aid of public funds to parochial schools promotes the general welfare of the pupils of such schools because it aids in their education. In passing on the constitutionality of legislation as to whether it violates the particular prohibition of sec. 18, art. I, Wisconsin constitution, courts are not foreclosed by a legislative declaration that the act is in furtherance of some facet of the promotion of the public welfare valid in itself, if the

effect of the questioned act would in fact violate such prohibition had there been no legislative declaration of its purpose included in the title or body of the act. We are cognizant that a California intermediate appellate court, in *Bowker v. Baker* (1946), 73 Cal. App. (2d) 653, 167 Pac. (2d) 256, upheld the validity of an act, which provided transportation at public expense to parochial school pupils, on the ground that it promoted the welfare of the children. This was held in spite of a prohibition in the California constitution similar to the one contained in sec. 18, art. I of our own constitution. Nevertheless, we do not find this California decision persuasive, or one which this court should follow.

A number of state courts have considered the validity, under state constitutional provisions, of statutes providing for the transportation of parochial school students at public expense. Six states have voided such acts on the ground that public expenditures to support any religious institution are invalid. *State v. Brown* (1934), 36 Del. (6 Harr.) 181, 172 Atl. 835, writ of error dismissed on other grounds (1938), 39 Del. (9 Harr.) 187, 197 Atl. 478; *Judd v. Board of Education* (N. Y.), *supra; Gurney v. Ferguson* (1941), 190 Okla. 254, 122 Pac. (2d) 1002, certiorari denied (1942), 317 U. S. 588, 63 Sup. Ct. 34, 87 L. Ed. 481; *Visser v. Nooksack Valley School Dist.* (Wash.), *supra; McVey v. Hawkins* (1953), 364 Mo. 44, 258 S. W. (2d) 927; *Matthews v. Quinton* (Alaska 1961), 362 Pac. (2d) 932. One of these states, New York, subsequently amended its constitution to authorize such transportation. See *Board of Education v. Allen* (1959), 17 Misc. (2d) 1080, 192 N. Y. Supp. (2d) 186 (N. Y. Const. sec. 4, art. XI).

Only one reported state opinion, *Bowker Case, supra,* has held such a statute to be for the benefit of the nonpublic school pupils and not in violation of state constitutional prohibitions similar to those contained in sec. 18, art. I of the Wisconsin constitution. Four states have upheld the

constitutionality of nonpublic school pupil transportation acts, but did not consider constitutional prohibitions analogous to sec. 18, art. I, or statutes analogous to ch. 648. *Snyder v. Newtown* (1960), 147 Conn. 374, 161 Atl. (2d) 770, appeal dismissed (1961), 365 U. S. 299, 81 Sup. Ct. 692, 5 L. Ed. (2d) 689; *Nichols v. Henry* (1945), 301 Ky. 434, 191 S. W. (2d) 930; *Adams v. St. Mary's County* (1942), 180 Md. 550, 26 Atl. (2d) 377; *Everson v. Board of Education* (1945), 133 N. J. L. 350, 44 Atl. (2d) 333, affirmed (1947), 330 U. S. 1, 67 Sup. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392. Three states have invalidated such transportation systems on other than constitutional grounds. *Squires v. Augusta* (1959), 155 Me. 151, 153 Atl. (2d) 80; *School Dist. v. Houghton* (1956), 387 Pa. 236, 128 Atl. (2d) 58; *Quinn v. School Comm.* (1955), 332 Mass. 410, 125 N. E. (2d) 410.

The most-recent case passing on the constitutionality of a state statute providing for the transportation of parochial school pupils by public school buses is that of the Alaska supreme court in *Matthews v. Quinton, supra,* decided in 1961. The statute before the court had been enacted while Alaska was still a territory, and the applicable provision of the constitution of the territory provided:

". . . nor shall any public money be appropriated by the territory or any municipal corporation therein for the support or benefit of any sectarian, denominational, or private school, or any school not under the exclusive control of the government; . . . and all laws passed, or attempted to be passed, by such legislature in said territory inconsistent with the provisions of this section . . . shall be null and void."

We deem this constitutional prohibition to be no more stringent in its prohibition than the last clause of sec. 18, art. I of our own state constitution.

In an exhaustive opinion, the Alaska court reviewed the other decisions which have dealt with the constitutionality

of statutes providing for transportation of parochial school pupils. It conceded that there was a division of authority, but, in spite of a strong dissent, concluded that the cases invalidating such statutes, because of state constitutional prohibitions, were the more persuasive. This view coincides with our own conclusion after carefully reading both lines of cases.

Most of the statutes ruled upon, in the opinions of other courts, provided for the transportation of parochial school pupils directly to the schools attended by them. Ch. 648 does not do this, but only provides for their transportation to the nearest public school which they would be entitled to attend. We do not deem that this difference in any way affects the constitutional issue.

On this aspect of the case, the decision of the Washington court in *Visser v. Nooksack Valley School Dist., supra,* is pertinent. Washington first passed a law for the transportation of private school pupils which was interpreted in *Mitchell v. Consolidated School Dist.* (1943), 17 Wash. (2d) 61, 135 Pac. (2d) 79, 146 A. L. R. 612, as authorizing such transportation to and from sectarian schools, and was held to be invalid under a prohibition in the Washington constitution similar to that of sec. 18, art. I, Wisconsin constitution. After this decision, the Washington legislature passed a new statute which provided: "All children attending school in accordance with the laws relating to compulsory attendance in the state of Washington shall be entitled to use the transportation facilities provided by the school district in which they reside." Plaintiffs in the *Visser Case,* parents of children attending a private religious school, instituted an action for mandamus to compel defendant school district and its board of school directors to permit plaintiffs' children to use the district's transportation facilities, which transported pupils to the public school. The complaint alleged that plaintiffs' children rendered themselves available for

transportation along the route regularly established by the district for transportation of pupils and that the district had ample transportation facilities available for transporting plaintiffs' children. The court held, in spite of the fact that the transportation to be provided under the statute represented at least in part a legislative concern for the safety of children, that the *Mitchell Case* was controlling and that the law violated the prohibition of the state constitution that "no public money or property shall be appropriated for or applied to any religious worship, exercise, or instruction, or the support of any religious establishment." The opinion further pointed out, in answer to the argument that the law was an exercise of the police power for the benefit of the children to be transported to private religious schools, that the police power may not be exercised in contravention of plain and unambiguous inhibitions of a constitution.

In the instant case, the attorney general urges that this court should adopt the construction of sec. 18, art. I of our constitution which the United States supreme court, by a five-to-four decision in *Everson v. Board of Education, supra,* placed upon the provisions relating to religion contained in the First amendment to the United States constitution. A sufficient answer to this argument is found in this statement appearing in the Washington court's opinion in the *Visser Case* (33 Wash. (2d) 711):

"Although the decisions of the United States supreme court are entitled to the highest consideration as they bear on related questions before this court, we must, in light of the clear provisions of our state constitution and our decisions thereunder, respectfully disagree with those portions of the *Everson* majority opinion which might be construed, in the abstract, as stating that transportation, furnished at public expense, to children attending religious schools, is not *in support* of such schools. While the degree of support necessary to constitute an establishment of religion under the first amendment to the federal constitution is foreclosed

from consideration by reason of the decision in the *Everson Case, supra,* we are constrained to hold that the Washington constitution, although based upon the same precepts, is a clear denial of the rights herein asserted by appellants."

A prior opinion of this court, on the effect of sec. 18, art. I of our constitution, is in strict agreement with this conclusion of the *Visser Case.* In *State ex rel. Weiss, supra,* this court [3] stated (p. 207) :

"Wisconsin, as one of the later states admitted into the Union, having before it the experience of others, and probably in view of its heterogeneous population, . . . has, in her organic law, probably furnished a more-complete bar to any preference for, or discrimination against, any religious sect, organization, or society than any other state in the Union."

Thus, we deem that the First amendment provision, which prohibits laws "respecting an establishment of religion," lends itself to more flexibility of interpretation than the provision contained in the last clause of sec. 18, art. I of the Wisconsin constitution.[4] Furthermore, as pointed out in Comment, A Constitutional Analysis of the Wisconsin School Bus Law, 1962 Wisconsin Law Review, 500, the weight of authority since the *Everson Case* is clearly against the constitutionality of providing publicly financed transportation and related aids to nonpublic school children.

For reasons previously stated herein, we conclude that ch. 648, Laws of 1961, is in direct violation of that portion

---

[3] The statement appears in the concurring opinion of Mr. Justice CASSODAY, but it is on a subject expressly reserved for his consideration in the court's opinion by Mr. Justice LYON, and thus represents the opinion of the court.

[4] This conclusion is supported by the decisions of the United States supreme court. For a thorough review of these decisions interpreting the freedom of religion and establishment of religion clauses of the First amendment, see Kurland, Of Church and State and the Supreme Court, 29 University of Chicago Law Review (1961), 1.

of sec. 18, art. I of the Wisconsin constitution, which prohibits the expenditure of any public funds "for the benefit of religious societies, or religious or theological seminaries."

*By the Court.*—Petition dismissed.

FAIRCHILD, J. (*dissenting*). Ch. 648, Laws of 1961, presents this court with a difficult and delicate problem. The legislature has seen fit to modify the existing line of accommodation between the rights and interests of those who support and attend parochial schools and the rights and interests of those who make a different choice. This court must decide whether this modification upsets the balance between these various rights and interests effected by the provisions of our constitution with respect to religious freedom and separation of church and state.[1]

Our constitution laid upon the state the task of providing a system of public schools and our statutes have so provided. Public schools now serve about 700,000 children. Parochial schools serve about 240,000. Most are Catholics, some Lutheran, and a few Seventh-day Adventists. I am sure that these schools are being supported for the most part at substantial financial sacrifice by those families whose religious faith and conscience make it important to them to do so.

It is assumed that the right of parents to send their children to parochial schools is protected by the federal constitution.[2] The constitution of Wisconsin provides in sec. 18, art. I:

---

[1] The question before us arises only under the Wisconsin constitution. The supreme court of the United States has decided that a state does not violate the constitution of the United States by furnishing transportation of children to parochial schools. *Everson v. Board of Education* (1947), 330 U. S. 1, 67 Sup. Ct. 504, 91 L. Ed. 711, 168 A. L. R. 1392.

[2] *Pierce v. Society of Sisters* (1925), 268 U. S. 510, 45 Sup. Ct. 571, 69 L. Ed. 1070, 39 A. L. R. 468.

"The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; . . . nor shall any control of, or interference with, the rights of conscience be permitted, . . ."

The existence of parochial schools is presumably an implementation of the rights protected by these portions of sec. 18. Attendance at a "private" school is expressly recognized as a fulfilment of the compulsory school-attendance law of the state.[3]

On the other hand, sec. 18, art. I, also provides:

". . . nor shall any man be compelled to . . . support any place of worship, . . . nor shall any money be drawn from the treasury for the benefit of religious societies or religious . . . seminaries."

These provisions, however, have not meant that the laws must be completely sterile of benefit to religious societies or parochial schools. As recognized in the majority opinion, traditionally such support and benefit as is implicit in tax exemption both of gifts to, and property of religious bodies has not been thought to violate sec. 18, art. I, Wis. Const.

Bus transportation of school children, though of course unknown in 1848, has become commonplace and virtually a necessity where other means of public transportation are not available. The use of public money to provide such transportation is not invalid as devoting public money to a private purpose, even though parents are thereby relieved of the cost which they might otherwise have to bear, upon the theory that the safety and welfare of school children are thus protected.[4] Highway networks, the use of buses, and consolidation of public school districts have grown side by side. By enlarging public school districts, we have recognized

---

[3] Sec. 40.77, Stats.
[4] *Everson v. Board of Education, supra,* footnote 1.

that a better school can be provided more economically when the area from which the children come is large enough to support it, and the use of school buses rather than the provision by the parents of transportation individually helps make such enlargement feasible. Presumably the same facts of life exert similar pressures on parochial schools.

The majority of the court finds that because the new transportation authorized by ch. 648, Laws of 1961, will be virtually confined to transportation of parochial school students, a classification has been drawn in terms of religion, citing the reasoning of Mr. Justice JACKSON in *Everson v. Board of Education* [5] and the conclusion of Professor Kurland,[6] that the freedom and separation clauses should be read as prohibiting classification in terms of religion either to confer a benefit or to impose a burden.

The quoted principle is sound, but I cannot agree that secs. 40.53 (1) and 40.56 (3), Stats., as amended by ch. 648, Laws of 1961, create a classification in those terms. The amendment effected by ch. 648 adds parochial school children to the class benefited, but if the amendment were given effect, the total class receiving equal benefit would consist of all school children, without regard to attendance at public or parochial schools.

Before enactment of ch. 648, Laws of 1961, the legislature compelled each school district to say, in effect, to each school child within the district: "You are free to attend the public school. You are also free to use the bus transportation we furnish in order to attend. You are free to attend a parochial school if you so choose. But if you do not attend the public school you cannot use the bus transportation we furnish."

Ch. 648, Laws of 1961, would make this change: "You are free to use bus transportation to the public school whether

[5] *Supra,* footnote 1.
[6] Kurland, Of Church and State and the Supreme Court, 29 University of Chicago Law Review (1961), 1, 2.

you attend the public or a parochial school. If you choose to attend a parochial school, we will furnish you the identical transportation service to the same place that we provide your neighbor who attends the public school, no more and no less."

Under the law as amended by ch. 648, Laws of 1961, the exercise by parents of their right to send their children to parochial schools would no longer be burdened with the expense or difficulty of providing transportation for them if the parochial school attended is so located that the child can take advantage of bus transportation to the public school. Such children would receive the transportation in the interests of their safety and welfare whether or not similar transportation had previously been provided for them. The line of accommodation referred to earlier is modified by ch. 648 in this respect, but in no other.

As to the school child whose conscience impels him to choose to attend a parochial school, and as to his parents, ch. 648, Laws of 1961, is an implementation and protection of his and his family's religious freedom. The question for the court, of course, is: "Does the law destroy or impair constitutionally protected rights of others?"

On the face of the law, I can find no suggestion of such impairment. Unlike the laws held invalid in all but one of the cases from other states relied upon by the majority, ch. 648, Laws of 1961, does not provide for bus transportation directly to parochial schools. Thus it does not raise some of the questions which might be raised by such a provision: (1) Whether parochial school authorities might be thought to have a degree of control over the public school buses in working out routes, schedules, and the like; or (2) whether a forbidden burden might be imposed upon the public treasury because of greater cost of transporting students directly to parochial schools rather than to the public schools they would otherwise be entitled to attend, or (3) whether

the majority referendum vote in 1946 against a proposed amendment to the constitution with respect to school transportation effects an interpretation of the constitution as prohibiting transportation to nonpublic schools in the absence of amendment.[7]

The majority has concluded that the fact that some of the cost of transportation of school children to parochial schools is presently borne by religious associations or by parochial schools, and the fact that ch. 648, Laws of 1961, would relieve those particular associations and schools of such expense, would result in ch. 648 conferring a benefit on those religious groups which cannot be constitutionally provided by an expenditure of public funds.

We do not know in how many cases such financial benefit flows to the religious association or parochial school rather than directly or indirectly to the parents of the children. That some indirect and incidental advantage of this type will accrue to some religious groups or parochial schools which now do or might in the future provide bus transportation themselves, I have no doubt. But I do have serious doubt that the type of advantage just referred to is the type of benefit which is forbidden by the constitution. This advantage results incidentally to the religious group from the benefit conferred primarily on the children themselves, and on their parents. It is, of course, not identical to, but it has

---

[7] For some reason the amendment proposed by Jt. Res. No. 78, 1945, would have amended sec. 3, art. X, Wis. Const., simply providing that the prohibition against sectarian instruction shall not bar the legislature from providing for transportation to any school, and would not have amended sec. 18, art I. The question on the ballot, however, was stated more directly as: "Shall section 3 of article X of the constitution be amended so as to authorize the legislature to provide for the transportation of children to and from any parochial or private school or institution of learning?"

some similarity to the advantage flowing incidentally by reason of the paving of good highways providing access to a parochial school or a church.

An even-closer analogy is the benefit which would accrue to the parochial school whose pupils attend some classes in the public school system. The majority opinion attempts to distinguish that situation from transportation. Yet in both situations public funds redound to the benefit of the parochial school, which is thereby relieved of an obligation it itself has assumed, and which is better able to attract students because of such expanded-course offerings.

The transportation furnished is identical to that which is furnished to children attending public school and which would be furnished to the very same children now attending parochial school if they did not choose to continue to do so.

An argument made by the respondent but not dealt with by the majority is that ch. 648, Laws of 1961, would impair the rights of those parochial school children who would not be able to use the bus transportation provided because the parochial school which they attend is not near enough to the public school they would be entitled to attend so that they could use the bus transportation to advantage. It seems to me that this argument can be disposed of on several grounds, one at least being that the attendance at a parochial school is a matter of choice, and the child who chooses to attend a parochial school so located that he could not use the public transportation afforded under ch. 648 would not be entitled to complain that other children choosing to attend parochial schools close to the public school they were entitled to attend could make use of it with advantage.

Members of the legislature mindful of their oaths of office must have determined that the amendment to the statutes which they devised would lie within constitutional limitations

and the fact that they enacted the law entitles it to a presumption of validity.[8]

I recognize that whether ch. 648, Laws of 1961, violates the portion of sec. 18, art. I, Wis. Const., forbidding use of public funds to confer a benefit on a religious group is a serious question. It seems to me, however, that this is a proper case for the application of the rule that a statute will be held unconstitutional only when it so appears beyond a reasonable doubt.[9] It seems to me that the question of whether unconstitutional benefits are conferred on religious groups is in the field of doubt, and therefore the legislature's conclusion that the law as amended by ch. 648, Laws of 1961, is wise ought to prevail.

I am authorized to state that Mr. Justice HALLOWS concurs in this opinion.

---

[8] 11 Am. Jur., Constitutional Law, pp. 791, 792, sec. 129.

[9] *White House Milk Co. v. Reynolds* (1960), 12 Wis. (2d) 143, 106 N. W. (2d) 441; *School Dist. v. Marine Nat. Exchange Bank* (1960), 9 Wis. (2d) 400, 101 N. W. (2d) 112; *Borgnis v. Falk Co.* (1911), 147 Wis. 327, 133 N. W. 209.