DR. BARBARA THOMPSON, State Superintendent Department of PublicInstruction
You have directed my attention to ch. 307, Laws of 1973, creating sec. 118.255, Stats., to provide "health treatment services to private school pupils with special physical or mental health treatment needs." You advise that the statute is ambiguous and that you are uncertain as to what services may be provided as "health treatment services" under the act.
You indicate that you have interpreted this act as permitting local school districts to provide students in private schools with those services rendered by certain health and treatment oriented personnel such as speech and language therapists, physical therapists, occupational therapists, school psychologists and school social workers. Specifically you ask whether the statute would permit a local school district to send certified special education teachers into private schools to establish and provide special education services to the pupils therein.
The legislative purpose and intent with respect to ch. 307, Laws of 1973, is expressed therein as follows: *Page 76 
 "SECTION 1. PURPOSE. The intent of this act is to provide for the health and welfare of children by providing health treatment services within the private school facilities to private school pupils with special physical or mental health treatment needs."
Section 118.255 (1) (a), Stats., created by ch. 307, Laws of 1973, defines "physical or mental health treatment services" as "treatment for physical, crippling or orthopedic disability, developmental disability, emotional disturbance, hearing impairment, visual disability, speech or language disabilities; and includes itinerant services such as evaluation and diagnostic services." Although there is great similarity between the conditions for which "health treatment services" may be provided under sec. 118.255, Stats., and the conditions for which exceptional education programs must be provided pursuant to ch. 89, Laws of 1973, sec. 115.76, et seq., Stats., ch. 307, interpreted in light of the express legislative intent, is limited to authorizing services related to the health and welfare of children attending private schools.
Therefore, it is my opinion that ch. 307, Laws of 1973, does not authorize local school districts to send special education teachers into private schools to establish and provide special education services to private school pupils. Neither sec.118.255, Stats., nor any statute grants authority to provide special education teachers at public expense in nonpublic schools. Without such statutory authority, the provision of such services is improper. 63 OAG 8 (1974).
Furthermore, it is my opinion that ch. 307, Laws of 1973, would be unconstitutional under both Art. I, sec. 18, Wis. Const., and the First Amendment to the United States Constitution if it were construed as authorizing educational services for students attending private schools with religious affiliations. Meek v.Pittenger (1975), 421 U.S. 349, 95 S.Ct. 1753. 44 L.Ed.2d 217; 55 OAG 124 (1966). To the extent that ch 307, Laws of 1973, is confined to authorizing services that are strictly related to health and welfare, its constitutionality may be less suspect.Everson v. Board of Education (1946), 330 U.S. 1, 67 S.Ct. 504,91 L.Ed. 711; State ex rel. Warren v. Reuter (1969), 44 Wis.2d 201,170 N.W.2d 790; but see, State ex rel. Reynolds v. Nusbaum
(1962), 17 Wis.2d 148, 115 N.W.2d 761. *Page 77 
In Meek, the United States Supreme Court struck down a Pennsylvania statute which, among other things, provided for remedial academic programs and therapeutic services in nonpublic schools. The specific services which were to be provided by the Pennsylvania law were:
 ". . . guidance, counseling and testing services; psychological services; services for exceptional children; remedial and therapeutic services; speech and hearing services; services for the improvement of the educationally disadvantaged (such as, but not limited to, teaching English as a second language), and such other secular, neutral, nonideological services as are of benefit to nonpublic school children and are presently or hereafter provided for public school children of the Commonwealth. Meek v. Pittenger, 421 U.S. at 352, fn. 2.
Like the Pennsylvania statute, ch. 307, laws of 1973, provides that certain services may be provided "within the private school facilities to those private school pupils who are referred to [the public school authorities]" provided that the same services are also made available to students attending public schools. Since the Pennsylvania statute dealt with the provision of educational services, there is little doubt that ch. 307, laws of 1973, would be unconstitutional to the extent that it were construed to authorize such services.
The principal constitutional defect in the statute before the court in Meek was its potential for providing "excessive entanglement" between church and state. Meek v. Pittenger,421 U.S. at 369-370. This excessive entanglement arose from the provision in the Pennsylvania statute, also present in ch. 307, Laws of 1973, which allows for public school personnel to provide services to students within sectarian private school facilities. The law makes it virtually impossible administratively to keep the publicly provided program neutral and nonsectarian. It is also virtually impossible politically to maintain and continue that program without dividing the community along religious lines. Consequently, the law creates an unconstitutionally excessive entanglement between church and state. Meek v.Pittenger, 421 U.S. at 372. *Page 78 
The United States Supreme Court acknowledged in Meek that theFirst Amendment to the United States Constitution is flexible enough to allow certain kinds of incidental services to be rendered students attending private church-related schools.
 "It is, of course, true that as part of general legislation made available to all students, a State may include church-related schools and programs providing bus transportation, school lunches, and public health facilities — secular and nonideological services unrelated to the primary, religious oriented educational function of the sectarian school. The indirect and incidental benefits to church-related schools from those programs do not offend the constitutional prohibition against establishment of religion." Meek v. Pittenger, 421 U.S. at 365.
To the extent that ch. 307, laws of 1973, is related solely to providing public health services, it may pass constitutional muster. However, the potential for excessive entanglement between church and state under ch. 307, Laws of 1973, exists regardless of the type of services, health and welfare or educational, authorized thereunder. Therefore, even if its "primary effect" is not to aid religion, because of the potential for excessive entanglement its constitutionality may nevertheless be in jeopardy. Furthermore, Art. I, sec. 18, Wis. Const., has been read more restrictively than the First Amendment and, therefore, ch. 307, even as strictly construed, may fail to pass the more restrictive test imposed by the Wisconsin Constitution. CompareEverson v. Board of Education, supra, with State ex rel. Reynoldsv. Nusbaum, supra; but see, State ex rel. Warren v. Nusbaum
(1972), 55 Wis.2d 216, 332-333, 198 N.W.2d 650; State ex relWarren v. Nusbaum (1974), 64 Wis.2d 314, 327-329,219 N.W.2d 577.
To the extent that you have interpreted ch. 307, Laws of 1973, as allowing local school districts to provide health and welfare services — as distinguished from education services — to private school students your interpretation is consistent with the legislative act. This is so even if those services are rendered by persons also qualified to render educational services although the latter type services are not authorized by the act. However, even as limited by this narrow construction, the law may be unconstitutional if the services thereunder are rendered in church affiliated private *Page 79 
schools. Ultimate determination of this issue must be left to a court test.
BCL:DJH