DR. BARBARA THOMPSON, State Superintendent, Department of PublicInstruction
You have advised that Title I of the Elementary and Secondary Education Act, as amended by Public Law 93-380, Education Amendments of 1974 (hereinafter Title I) provides federal aids for educationally deprived children and mandates that those aids be spent for children attending both public and private schools. You note my previous advice to your predecessor, 55 OAG 124 (1966), that the use of federal funds received under Title I is subject to the limitations imposed by Art. I, sec. 18, Wis. Const., and that such limitations prohibit the use of Title I funds to pay the salary of public school teachers who may be sent into church affiliated private schools to teach. You ask whether it is still constitutionally impermissible to pay salaries of public school teachers who may be sent into parochial schools to teach in Title I programs.
It is my opinion that Title I funds may not be used in Wisconsin to pay teaching personnel in parochial schools.
Title I funds must be spent in a manner which is consistent with state law. Wheeler v. Barrera (1974), 417 U.S. 402, *Page 137 94 S.Ct. 2274, 41 L.Ed.2d 159. This requirement exists regardless of whether the federal funds can be separately identified and distinguished from state funds. 55 OAG 124 (1966).
The academic programs included in Title I encompass such subjects as art, reading, speech, mathematics, pre-kindergarten and kindergarten classes. This broad range of programs provides a course of instruction little different from that usually offered as a part of basic education. Accordingly support of these programs confers a substantial benefit upon the recipient, that is, the school.
Conferring such a benefit on a parochial school violates that provision of Art. I, sec. 18, Wis. Const., which provides, in part, ". . . nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries." State ex rel. Weiss v. District Board (1890),76 Wis. 177, 44 N.W. 967; State ex rel. Reynolds v. Nusbaum (1962),17 Wis.2d 148, 115 N.W.2d 761.
Article I, sec. 18, Wis. Const., is to be read more restrictively than the First Amendment. State ex rel. Weiss v.District Board, supra; compare Everson v. Board of Education
(1946), 330 U.S. 1, 67 S.Ct. 501, 91 L.Ed. 711, with State exrel. Reynolds v. Nusbaum, supra. Furthermore, the recent case ofMeek v. Pittenger (1975), 421 U.S. 349, 95 S.Ct. 1753,44 L.Ed.2d 217 invalidated, under the First Amendment to the U.S. Constitution, a program which would have allowed for public school teachers to teach special education courses in parochial schools. Consequently, it is doubtful under both the Wisconsin and the United States Constitutions, that Title I funds may be used to pay the salary of any person who teaches in a parochial school. See also, OAG 27-75, August 5, 1975.
My conclusion is not disturbed in any way by the holdings inState ex rel. Warren v. Nusbaum (1972), 55 Wis.2d 316,198 N.W.2d 650, or State ex rel. Warren v. Nusbaum (1974), 64 Wis.2d 314,218 N.W.2d 577. In the 1972 case the Wisconsin Supreme Court determined that a contract between the state and Marquette University to provide funding for the Marquette Dental School was unconstitutional because it broadly provided funds to be used by a sectarian university "exclusively in support of its operating costs." The court did note that a more narrowly drawn *Page 138 
contract serving an exclusively secular purpose, namely, the advancement of dental education, would be valid.
In the 1974 case the state Supreme Court sustained the validity of sec. 115.85 (2) (d), Stats., which allows for state payment of tuition for children with special educational needs at private schools. The statute was found to serve a secular purpose and to be drawn so narrowly as to limit eligibility to those private institutions which effectively separate their religious characteristics, if any, from the secular purpose of providing special education.
Both these cases are in harmony with the "primary effect" test enunciated by the United States Supreme Court. To be permissible under the "primary effect" test, the use of state funds must have the primary effect of promoting some legitimate secular purpose under the police power of the state and must not have any direct or immediate effect which advances or benefits religion.Committee for Public Education v. Nyquist (1973), 413 U.S. 756,783 fn. 39, 93 S.Ct. 2955, 37 L.Ed.2d 948.
As suggested in 55 OAG 124 (1966), and Wheeler v. Barrera,supra, Title I does not have to be implemented by providing teaching services in parochial schools. Title I merely requires that programs be provided for parochial school students which are comparable, but not identical to services provided to public school students. Such services can be provided through the use of dual enrollment programs, educational television and mobile education programs, among others. Determination of the method by which such services are to be provided is delegated to state and local educational authorities. Those authorities have considerable latitude in the exercise of this authority subject, however, to state constitutional and statutory limitations and federal constitutional limitations.
BCL:DJH:JWC *Page 139