EDWARD JACKAMONIS, Chairman, Assembly Committee on Organization
You have asked me to answer several questions concerning 1977 Assembly Bill 500. You are concerned with the following section of the Bill:
 "SECTION 3. 20.255 (6) of the statutes is created to read:
 "20.255 (6) Acceptance of funds. (m) Federal aid.
Notwithstanding s. 20.865 (4) (m), moneys received by the state under the federal elementary and secondary education act of 1965 (P.L. 89-10) shall not be paid into the state treasury and shall not be subject to the laws, rules and regulations governing payments made by the state treasury, but shall be deposited in and constitute the separate nonlapsible fund which is created and designated as the federal educational assistance trust fund. There is appropriated from the federal educational assistance trust fund to the department all federal moneys received under the federal elementary and secondary education act of 1965, as authorized by the governor under s. 16.54, to carry out the uses and purposes of that act."
Your questions, the analysis by the Legislative Reference Bureau and the fiscal note all indicate that the purpose of this legislation is to put funds received under the Elementary and Secondary Education Act of 1965 (ESEA) beyond the effect of Wis. Const. art. I, sec. 18. This section provides: *Page 72 
 "FREEDOM OF WORSHIP; LIBERTY OF CONSCIENCE; STATE RELIGION; Public Funds. Section 18. The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."
A brief discussion of art. I, sec. 18 is given at this time in order to serve as background for the balance of the opinion.
A detailed interpretation of art. I, sec. 18 was first made by the Wisconsin Supreme Court in State ex rel. Weiss v. DistrictBoard, 76 Wis. 177, 44 N.W. 967 (1890). In this case parents of Roman Catholic faith brought suit to prevent the reading of the King James version of the Bible in public school where their children were in attendance. In holding that the reading of the Bible violated art. I, sec. 18 as well as art. X, sec. 13 the court wrote "Wisconsin . . . has, in her organic law, probably furnished a more complete bar to any preference for, or discrimination against, any religious sect, organization, or society than any other state in the Union." 76 Wis. at 207-208,217-221. In State ex rel. Reynolds v. Nusbaum, 17 Wis.2d 148,115 N.W.2d 761 (1962), the court reaffirmed the position taken in theWeiss case regarding the interpretation of art. I, sec. 18.
In question 1. a. you ask:
 "a. Did the drafters of the Wisconsin Constitution intend that art. I, s. 18, Wis. Const., prohibit the administration and management by state officials of any
moneys that would benefit religious societies or religious or theological seminaries? In other words, was the prohibition intended to prevent the `entanglement' of the state in the affairs of such societies and seminaries or merely to prevent the use of funds drawn from the State Treasury to support such institutions?" *Page 73 
The answer to this question is yes. The phrase in art. I, sec. 18 "nor shall any money be drawn from the treasury" means those monies of which the state has taken possession pursuant to law. Those monies are public funds. 63 Am. Jur. 2d Public Funds etseq. This is true even though they are held for a special purpose. In State ex rel. Reynolds v. Nusbaum, 17 Wis.2d 148,165-166 (1962), the Wisconsin Supreme Court held that a statute providing for the transportation of parochial students was unconstitutional because it was "in direct violation of that portion of sec. 18, art. I of the Wisconsin constitution, which prohibits the expenditure of any public funds `for the benefit of religious societies, or religious or theological seminaries."' (Emphasis added.) Furthermore, in Democrat Printing Co. v.Zimmerman, 245 Wis. 406, 414, 14 N.W.2d 428 (1944), the court stated:
 ". . . whether the funds be granted to the board of regents, or to the university, or to the state as grantee, the state in any case becomes the owner of the fund as both the board of regents and the university are agencies of the state to whom the administration of state functions is intrusted."
Section 34.01 (5), Stats., dealing with public deposits provides:
 "`Public moneys' shall include all moneys coming into the hands of the state treasurer or the treasurer of any county, city, village, town, drainage district, power district, school district, sewer district, or of any commission, committee, board or officer of any governmental subdivision of the state, or the clerk of any court in this state, by virtue of his office without regard to the ownership thereof."
The proscription in Wis. Const. art. I, sec. 18, against drawing money from the treasury actually amounts to a proscription against using public monies. "[N]or shall any money be drawn from the treasury" is an artful phrase stating the proscription.
In State ex rel. Thomson v. Giessel, 271 Wis. 15, 43,72 N.W.2d 577 (1955), the supreme court stated:
 "The relator submits that once the money is paid into the state treasury it becomes state money and can be paid out by the state treasurer only in pursuance of an appropriation by law (as provided in sec. 2, art. VIII, Const.). He contends that merely *Page 74 
because it is handled on a revolving basis does not change its character or give rise to any special or trust fund. We consider that the relator's position in this regard is correct . . . ."
In State ex rel. Thomson v. Giessel, 262 Wis. 51, 53 N.W.2d 726
(1952), the court had under consideration legislation providing additional benefits for retired teachers. The court held that the legislation was subject to the constraints of art. V, sec. 26 and rejected the argument that the transfer of the funds from the general fund to the contingent fund, to the annuity reserve fund, and then to the teacher altered the public character of the money.
The proposed legislation admits of the fact that the money is public money since the proposal actually appropriates the money. The legislation states: "There is appropriated from the federal educational assistance trust fund to the state department." If the money were not state public money, it could not be appropriated by the Legislature.
In conclusion, in answering 1. a., Wis. Const. art I, sec. 18
was intended to prohibit the administration and management by state officials of any public funds in a manner that would benefit religious societies or religious or theological seminaries. The Legislature, by appropriating and delegating further responsibility for funds to another public entity, cannot thereby insulate those funds from Wisconsin's constitutional restrictions on state intervention in religious affairs.
I am aware that courts in some other states have reached somewhat different results. See, for example, In re Proposal C,384 Mich. 390, 185 N.W.2d 9 (1971). But in view of the precedent established in Wisconsin concerning Wis. Const. art I, sec. 18, I believe our supreme court would hold sec. 3 of AB 500 unconstitutional.
Question 1. b. reads:
 "By stating that ESEA funds are not to be paid into the State Treasury but into the federal education assistance fund, does A.B. 500 have the effect of causing such funds not to be part of the State Treasury for the purposes of the prohibition of art. I, s. 18, Wis. Const.?" *Page 75 
By virtue of my answer to question 1. a., the answer to this question is no.
Questions 1. c. read:
 "Who would (or could) be responsible for receiving and disbursing money from the federal education assistance fund established by A.B. 500? Who would (or could) sign the checks? To what extent can routine procedures for receiving, disbursing, investing and auditing the use of such funds be followed without violating the Wisconsin Constitution? Are there any limitations on the activities of state officials which would be necessary to avoid violating the Constitution?"
These questions assume the constitutionality of sec. 3 of 1977 AB 500. Since sec. 3 is, in my opinion, unconstitutional and because of the constitutional prohibition against the use of public funds for the purposes set forth in AB 500, it is unnecessary to answer these questions.
Additionally, some of the questions are very generally propounded and are incapable of meaningful response in the absence of an actual proposal to consider. Any proposed legislation in this field must at least comport with the following pronouncement of the United States Supreme Court inLemon v. Kurtzman, 403 U.S. 602, 612-613 (1971)
 "Every analysis in this area must begin with consideration of the cumulative criteria developed by the Court over many years. Three such tests may be gleaned from our cases. First, the statute must have a secular legislative purpose; second, its principal or primary effect must be one that neither advances nor inhibits religion, Board of Education v. Allen, 392 US 236, 243
(1968); finally, the statute must not foster an excessive government entanglement with religion. [Walz v. Tax Commission, 397 US 664, 674 (1970)]"
Question 1. d. reads:
 "Can moneys which are outside of the State Treasury, pursuant to A.B. 500, be subject to legislative appropriations and become part of the state budget, as is done in A.B. 500?" *Page 76 
This question assumes sec. 3 of AB 500 would accomplish something that it does not. As already stated, the constitutional proscription is against the use of state public monies. The monies would be subject to legislative appropriation.
My answers to these questions are contrary to the opinion stated in 56 Op. Att'y Gen. 135 (1967). However, since the authorities relied on in that opinion do not support the conclusions reached, it is not controlling here. In view of this fact and my response to question 1 it would appear unnecessary to answer question 2.
I would offer here that it is highly questionable whether legislation establishing a separate fund that would still be subject to some legislative or executive control would be constitutional. Whether legislation creating a separate fund beyond governmental control to be administered by an independent entity would satisfy federal requirements in administering ESEA funds is beyond the scope of this opinion.
In your final question you ask:
 "Under the present method of receiving and disbursing federal ESEA funds, is it constitutionally permissible for the Department of Public Instruction to approve the rental of space by the public school district in a nonpublic school building for the provision of programs funded with ESEA funds? Further, if such a rental program is not currently permissible under the Wisconsin Constitution, and if A.B. 500 is enacted, would it become permissible for the Department of Public Instruction to approve such rentals for programs funded from the federal education assistance fund established by A.B. 500?"
Both of these questions will be answered in an opinion to Superintendent of Public Instruction Barbara Thompson, which will be issued shortly.
BCL:JWC *Page 77