STATE EX REL. EDWARDS, Appellant, v. MCCAULEY, Super-
intendent, and another, Respondents.

*No. 289. Argued March 5, 1971.—Decided April 2, 1971.*
(Also reported in 184 N. W. 2d 908.)

598

For the appellant there were briefs by *Joseph F. Preloznik* and *Craig E. Miller,* both of Madison, and oral argument by *Mr. Preloznik.*

For the respondents the cause was argued by *William F. Eich,* assistant attorney general, with whom on the brief was *Robert W. Warren,* attorney general.

ROBERT W. HANSEN, J.   Here a fifteen-year-old girl was adjudicated delinquent in juvenile court proceedings. She was placed in the custody of the Division of Corrections of the State Department of Health & Social Services.[1] That day or the next day, she was transferred to the Wisconsin School for Girls at Oregon. Two days after the adjudication, without hearing or reason given for the transfer, she was transferred to the Wisconsin Home for Women at Taycheedah.

The initial claim of appellant is that there is no statutory authority for placement of a girl found delinquent in juvenile court proceedings in the state prison for women. The statute primarily involved is sec. 48.52, Stats. Since the legislative history is relevant, we set forth the statute and very briefly summarize how it came to be the present law governing the placement of children in the legal custody of the state's division of corrections.

The Children's Code of Wisconsin was extensively revised by ch. 575, Laws of 1955. That act created sec. 48.52, Stats., providing, in pertinent part:

"48.52. **Facilities for care of children in legal custody of department.**
"(1) FACILITIES MAINTAINED FOR CHILDREN. The state department of public welfare may maintain the following facilities for the care of children in its legal custody:
"(a) Receiving homes to be used for the temporary care of children;
"(b) Foster homes;
"(c) Group homes;
"(d) Institutions, facilities and services, including without limitation forestry or conservation camps for the training and treatment of children 12 years of age or older who have been adjudged delinquent;
"(e) The Wisconsin child center.
"(2) USE OF OTHER FACILITIES. (a) In addition to the facilities and services described in sub. (1), the department may use other facilities and services under its

---

[1] Pursuant to sec. 48.34 (1) (d) 4, Stats.

jurisdiction, *except that penal institutions may be used only for children adjudged delinquent and only until July 1, 1959, or such earlier date as medium security facilities for delinquents are in operation.* The department may also use other public facilities or contract for the use of private facilities for the care and treatment of children in its legal custody; but placement of children in private or public facilities not under its jurisdiction does not terminate the legal custody of the department. Removals to institutions for the mentally ill or mentally deficient shall be made in accordance with ch. 51." (Emphasis supplied.)

The "except that" clause is italicized as a preface to noting that in 1959, at the request of the department of public welfare, sec. 48.52 (2) (a), Stats., was amended by ch. 71, Laws of 1959, to delete the italicized portion, so the section no longer contains the provision:

"except that penal institutions may be used only for children adjudged delinquent and only until July 1, 1959, or such earlier date as medium security facilities for delinquents are in operation."

In urging that the legal construction of the statute, with the "except that" clause deleted, leaves the state with no statutory authority to transfer juvenile delinquents to adult penal institutions, appellant cites certain statutes as conflicting with sec. 48.52, Stats., and taking precedence over it, or, at the least, indicating a legislative intent not to commingle juveniles with adults in penal institutions. One such statute is sec. 46.16 (4), requiring the department to visit places of confinement to ". . . ascertain their arrangement for the separation of the hardened criminals from juvenile offenders. . ." [2] Another is the statute, secs. 973.01 and 973.02, listing per-

---

[2] "46.16 **General supervision and inspection by department.**

"(4) PRISONS. It shall visit all places in which persons convicted or suspected of crime or mentally ill persons are confined, and ascertain their arrangement for the separation of the hardened criminals from juvenile offenders . . . ."

sons who can be committed to the state prison for women.[3] A third, sec. 939.73, relates to criminal penalties being permitted only on conviction of crime.[4]

In urging the finding that the legislature, by deleting the "except that" clause, intended and did in fact restore a previously existing statutory authority to the department to transfer delinquents to state prisons, the attorney general cites statutory provisions consistent with such interpretation. One such is sec. 48.50, Stats., relating to placements "best suited to the child and, in the case of children who have violated a state law, to the protection of the public." [5] A second citation is sec. 48.51, a statute relating to type of care.[6] A third citation is of sec. 946.42, making escape from custody a criminal offense, including as a category of persons in custody one committed to the department as a juvenile but "placed by it in a state prison pursuant to sec. 48.52

---

[3] "973.01 **Indeterminate sentence; Wisconsin state prisons.**

"(3) Female persons convicted of a felony may be committed to the Wisconsin home for women.

"(4) A female person over 18 years of age convicted of a misdemeanor for which the maximum penalty is imprisonment for 6 months or more may be sentenced to a term not less than 6 months in the Wisconsin home for women instead of the county jail if the department certifies to the court that it has adequate facilities at said home and is willing to accept such commitment."

"973.02 **Place of imprisonment when none expressed.** . . . But in any proper case sentence and commitment may nevertheless be to the Wisconsin home for women, the department or any house of correction or other institution as provided by law."

[4] "939.73 **Criminal penalty permitted only on conviction.** A penalty for the commission of a crime may be imposed only after the actor has been duly convicted in a court of competent jurisdiction."

[5] "48.50 **Examination of children in legal custody of department.** (1) The department shall examine all children whose legal custody is transferred to it by the court to determine the type of placement best suited to the child and, in the case of children who have violated a state law, to the protection of the public. . . ."

[6] "48.51 **Type of care.** (1) Depending on the results of the examination of the child, the department may place the child in any of the appropriate facilities described in s. 48.52."

(2)," [7] which we read as referring to sec. 48.52 (2), before the "except that" clause was excised and a provision for transfer of delinquents to prisons was still in it.

Considered individually, we do not find any of the statutes cited by appellant or respondent as conflicting or taking precedence over sec. 48.52, Stats., or determinative of the construction to be given it. Viewed together, we would hold that the various statutes cited aid in establishing the fact that sec. 48.52 is ambiguous and susceptible to one of two entirely opposite constructions. The statutes cited by both parties to this appeal help in revealing ambiguity, but are of little help in resolving it.

The help in deciding between the two opposed constructions of sec. 48.52, Stats., derives from analysis of exactly what the legislature did in 1955 when it put the "except that" clause in the statute, and exactly what it did in 1959 when it took it out. Putting this clause in the law did three things: (1) It authorized the department to transfer children in its custody to penal institutions; (2) it limited such authority, specifically providing ". . . that penal institutions may be used only for *children adjudged delinquent* . . ." (emphasis supplied); (3) it set the time limit for such use as not later than July 1, 1959. Taking out the clause also resulted in three things being done: (1) The specific authority to place children in penal institutions until July 1, 1959, was stricken; (2) the sole specific reference to "penal institutions" was removed from the section; and (3) the sole reference in the section to "children adjudged delinquent" was removed from the section.

---

[7] "946.42 Escape. . . .

"(3) Any person in custody under any of the following circumstances who intentionally escapes from custody may be imprisoned not more than 5 years:

". . .

"(c) Committed to the state department of welfare as a juvenile but placed by it in a state prison pursuant to s. 48.52 (2)."

The briefs and arguments of appellant and respondent meet head on as to intent and consequence of taking from the section the specific authorization to place children in penal institutions and the striking from the section of its only reference by name to penal institutions as such. Not argued is the consequence of removing the provision that refers to "children adjudged delinquent" from the section. With this sole reference out, the section refers and relates only to "children in its legal custody." If the state department's position were upheld—that the repeal of the time-limited special authorization to transfer children adjudged delinquent to penal institutions restored or recreated an entirely unlimited right to make such placements—any child in legal custody of the department could, after the section was amended, be placed in a penal institution. This would include neglected and dependent children, as well as those adjudged delinquent, for clearly they are the "children in its legal custody" to which sec. 48.52, Stats., refers and relates.

Is it a reasonable interpretation of legislative intent that, when it deleted the mandate that "penal institutions may only be used for children adjudged delinquent," it was seeking to give the department the right to also send children in its custody not adjudged delinquent to state prisons or penal institutions? Is it not more reasonable a conclusion that they were seeking to take away the right to send even children adjudged delinquent to adult prisons rather than add a right to send neglected and dependent children to commingle with adult offenders in a prison environment? We find it a more reasonable construction of the statute that it took away the right of the department to send children adjudged delinquent to state penal institutions, rather than to find an intent or result that such right was to be expanded to include nondelinquent children placed in custody of the department.

Such consequence of the deletion of the limiting phrase, "children adjudged delinquent," from sec. 48.52, Stats., while not here briefed or argued, was noted by the author of a 1969 article in the Minnesota Law Review.[8] The author referred to Wisconsin as a state where ". . . substantial numbers of children have been transferred from institutions for delinquent children to the reformatory," and commented, "The language of the Wisconsin statute is so broad that it might encompass neglected and dependent children committed to the care of the department. . . ."[9] By way of footnote, he added: "This possible interpretation is strengthened by the deletion, in 1961 [1959], of language which expressly excluded such children: except that penal institutions may be used only for children adjudged delinquent and only until July 1, 1959, or such earlier date as medium security facilities for delinquents are in operation."[10] What the author saw as a possible interpretation, we see as an inescapable one, if the legislative intent is found to have been to remove the right to send children to adult prisons.

So determining the legislative intent and so construing the statute, sec. 48.52, Stats., as amended, we are not required to deal with the constitutional validity of a grant of power so broad that it would entitle the state department to send neglected and dependent children in its custody to a penal institution "for care." However, if the question of apparent legislative intent were closer, we have no hesitancy in stating that the construction argued by the state would be avoided for the reason that, given two alternative constructions of a statute, one of which would render the statute unconstitutional, the interpretation that does not constitu-

[8] 54 Minn. L. Rev. (1969), 101, *The Constitutional Validity of Confining Disruptive Delinquents in Penal Institutions,* by Maynard E. Pirsig, Professor of Law, University of Minnesota.

[9] *Id.* at page 105.

[10] *Id.* at page 105.

tionally offend is to be preferred.[11]  We see no basis in law or theory of custodial care that would warrant empowering a state administrative agency to place in an adult prison children placed in its custody solely because they had been neglected or were dependent.  Courts disagree as to whether children placed in the custody of such department because they were adjudged delinquent may be transferred or placed in an adult penal institution.  Some find a constitutional barrier to such transfer,[12] some do not,[13] but all such cases deal only with children adjudged delinquent, and usually with statutes or situations limited to juvenile delinquents who "cannot be contained" in a boys' school,[14] or are "incorrigible," [15]

[11] *State ex rel. La Follette v. Reuter* (1967), 36 Wis. 2d 96, 120, 153 N. W. 2d 49; *Petition of Breidenbach* (1934), 214 Wis. 54, 252 N. W. 366.

[12] *See State v. Owens* (1966), 197 Kan. 212, 223, 416 Pac. 2d 259, holding ". . . confinement in a penal institution will convert the proceedings from juvenile to criminal and require the observance of constitutional safeguards. . . ."; *In re Rich* (1966), 125 Vt. 373, 216 Atl. 2d 266, ordering return of delinquent boy from reformatory to boys' school, referring to the "administrative and disciplinary problems" involved; *United States v. Hegstrom* (D. C. Conn. 1959), 178 Fed. Supp. 17, 21, holding juveniles adjudged delinquent "must be confined only with other juveniles until and unless charged with and convicted of crime."; *State v. Adams* (1958), 143 W. Va. 325, 329, 102 S. E. 2d 145, 147, holding confinement of youth found to be "incorrigible" by juvenile court could not be "sentenced" by that court for a period of years to the state penitentiary; *White v. Reid* (1954 D. C. D. C.), 126 Fed. Supp. 867, 870, holding the purpose of the Juvenile Court Act of the District of Columbia ". . . extends not only to those who have violated the law, but also includes the truant, the abandoned, the homeless, the neglected."

[13] *See In re Darnell* (1962), 173 Ohio St. 335, 182 N. E. 2d 321, upholding commitment of juvenile adjudged delinquent to Ohio State Reformatory. *See also: Cope v. Campbell* (1964), 175 Ohio St. 475, 477, 196 N. E. 2d 457, holding juvenile delinquent's record of misconduct made him "a proper subject of commitment to the Ohio State Reformatory."

[14] *Wilson v. Coughlin* (1966), 259 Iowa 1163, 147 N. W. 2d 175, the court stated: "Petitioner's detention is custodial, not penal in

or "disruptive and incorrigible," [16] or where "protection of the welfare of other inmates" was involved.[17] It is enough here to observe that even those decisions approving the transfer deal with a right of transfer limited to situations disruptive of the program and protection of the welfare of other inmates in a child-serving institution. The majority of this court would not close the door to the constitutional validity of a narrowly drawn statute, as the one in the state of Washington, that authorizes only the transfer of "incorrigible juvenile delinquents," over the age of sixteen years, with incorrigibility statutorily defined as ". . . conduct by a juvenile committed to the department by the juvenile court indicating over the course of a reasonable period of time that the rehabilitative program of the department can be of no further benefit to such juvenile, and

nature, but the security provisions necessary for his detention are, in the first instance, strictly up to the boy. If he cannot be detained at the school, the board is given permission to transfer him to a more secure facility. . . . He is not permitted association with older prisoners. . . ."

[15] *Shone v. State* (Me. 1968), 237 Atl. 2d 412, 416, upholding transfer of juvenile delinquent to state reformatory, commenting, ". . . All these liberties vanish with his transfer to the Reformatory. But they are withdrawn for all juveniles transferred *because of incorrigibility* and thus the procedure is not offensive to the constitutional requirement of equal protection." (Emphasis supplied.)

[16] *Shone v. Maine* (S. D. C. Me. 1968), 286 Fed. Supp. 511, 515, the court stating, ". . . Undoubtedly it is not desirable for a young boy to be kept in company with experienced criminals in a prison environment. However, it is equally undesirable to have a disruptive and incorrigible youth hampering the program at a juvenile institution and exercising his unwholesome influence over the other boys there. . . ."

[17] *Id.* the court stating, ". . . In administering custodial and rehabilitative institutions, the state must have some latitude to determine what course of treatment is most appropriate for the individual inmate and to preserve discipline and protect the welfare of other inmates within its various institutions."

that he is in need of closer security." [18] However, this court cannot review nor constitutionally test a statute not before it, and we have held here that there is at this time in this state no statute that gives the department the right to transfer juveniles placed in its custody to an adult-serving penal institution. What such a statute can provide within constitutional limits cannot be determined or resolved in advance of its enactment. Questions of public policy to be served, as well as outer limits of constitutional validity, are involved. It is for the legislature, not the courts, to determine. However, we note that the 1955 statute here construed contained a legislative anticipation that medium security facilities for the treatment of disruptive delinquents would be provided. In fact the "except that" clause, later repealed, limited the authority to use penal institutions for placement of juveniles adjudged delinquent ". . . only until July 1, 1959, or such earlier date as medium security facilities for delinquents are in operation." It should be clear that the establishment of medium or close security facilities, either at the existing child-serving institutions, or in a separate location, or even as separated facilities within the geographical confines of penal institutions, would avoid, not only the commingling of children adjudged delinquent with adults found guilty of criminal offenses, but would eliminate, all members of this court agree, the possibility of successful attack upon constitutional grounds of such facilities for care and treatment of disruptive or dangerous juvenile delinquents. On the appeal now before us, it is enough to hold that there was no statutory authority for the transfer of the

---

[18] Wash. Rev. Code sec. 13.04.200 (Supp. 1967). Judicial review is permitted on the ground that the transfer is "arbitrary, capricious, or contrary to law." Wash. Rev. Code secs. 13.04.200, 13.04.220 (Supp. 1967).

then fifteen-year-old juvenile previously adjudged delinquent in juvenile court proceedings, from the Wisconsin School for Girls to the Wisconsin Home for Women.

*By the Court.*—Order reversed.