DR. BARBARA THOMPSON, State Superintendent, Department of PublicInstruction
In your letter of July 29, 1974, you ask whether rules governing student behavior on school busses may include suspension of bus "riding privileges while permitting school attendance for the period *Page 527 
of such suspension." Put another way, can the bus riding privilege be suspended without suspending the student from school?
Although the duty to enforce certain safety standards concerning the construction and operation of school busses resides with the Department of Transportation, the duty and authority to operate a system of transportation for students attending public and private schools is given to the local school districts by subch. II of ch. 121, Stats. Section 121.54 (2) (a), Stats., specifically provides:
 "Except as provided in sub. (1), every school board shall provide transportation to and from public school for all pupils who reside in the school district 2 miles or more from the nearest public school they are entitled to attend."
The exception in this section refers to an option given the cities which doesn't concern us in this opinion.
There is little doubt that school boards under the provisions of sec. 120.13 (1), Stats., as amended by ch. 94, Laws of 1973, have the authority to promulgate rules governing the behavior of students riding school busses, and in the case of public school students, to provide that such misbehavior might result not only in the suspension of bus riding privileges but also suspension from school or possibly expulsion.
Section 120.13 (1) (b), as amended by ch. 94, Laws of 1973, provides:
 "The school district administrator or any principal or teacher designated by him also may make rules, with the consent of the school board, and may suspend a pupil for not more than 3 school days or, if a notice of expulsion hearing has been sent under par. (c), for not more than a total of 7 consecutive school days for noncompliance with such rules or school board rules, or for conduct by the pupil while at school or while under the supervision of a school authority which endangers the property, health or safety of others. Prior to any suspension, the pupil shall be advised of the reason for the proposed suspension. The pupil may be suspended if it is determined that he is guilty of noncompliance with such rule, or of the conduct charged, and that his suspension is reasonably justified. The parent or guardian of a suspended minor pupil shall be given prompt *Page 528 
notice of the suspension and the reason therefor. The suspended pupil or his parent or guardian may, within 5 school days following the commencement of the suspension, have a conference with the school district administrator or his designee who shall be someone other than a principal, administrator or teacher in the suspended pupil's school. If the school district administrator or his designee finds that the pupil was suspended unfairly or unjustly, or that the suspension was inappropriate, given the nature of the alleged offense, or that the pupil suffered undue consequences or penalties as a result of the suspension, reference to the suspension on the pupil's school record shall be expunged. Such finding shall be made within 15 days of said conference. A pupil suspended under this paragraph shall not be denied the opportunity to take any quarterly, semester or grading period examinations missed during the suspension period." (Emphasis added.)
In my opinion, the bus driver is, or at least may be appointed such school authority to see that the rules of behavior duly adopted are obeyed by bus riders whether they attend public or private school. In fact, Wisconsin Administrative Code MVD 17.10 (4), relating to school bus drivers, requires that "Driver shall be responsible for the maintenance of order among children being transported. Misconduct shall be promptly reported to proper authority."
In situations where there is a sudden, immediate and grave threat to health and safety caused by the actions of one or more students, the student or students may be ejected from the bus. However, in the exercise of such extreme measures, care must be taken to see that the person or persons ejected are not exposed to harm or injury, that the matter is immediately reported to the authorities and that alternative transportation for those ejected will be provided within a reasonable time.
 "Although a common carrier of passengers may have the right to eject a passenger, it must exercise that right at a place and time that is reasonably free from danger, taking into consideration the surrounding circumstances and the condition of the passenger ejected. . . ." 14 Am.Jur. 2d, Carriers, sec. 1093, p. 511. *Page 529 
This foregoing rule of common law should be tempered by consideration of the fact that for the most part minor students and not, presumably, adult passengers on a common carrier are involved.
Consideration must be given to the fact that sec. 121.54 (2) (a), Stats., provides that the school board shall provide transportation to and from public schools. In view of this mandatory provision, it is my opinion that while the bus riding privilege may be revoked or suspended without suspension or expulsion from school, it can only be suspended if the procedure outlined in sec. 120.13 (1) (b), Stats., as amended by ch. 94, Laws of 1973, is followed. The privilege of riding a school bus is, in my opinion, equatable to the privilege of attending school to the extent that the benefit of the mandatory service is conditioned on behavior consistent with public health and safety. In the case of students attending public schools, the procedure outlined in sec. 120.13 (1), Stats., might result in a suspension not only of bus riding privileges but also suspension or expulsion from school. However, this section does not authorize expulsion or suspension from private schools for infraction of school bus rules by a student attending a private school. Nonetheless, such students should be entitled to the same due process that is given a public school child before bus riding privileges are revoked. This conclusion results in all children, whether they attend public or private schools, being treated in the same manner if they misbehave while riding the bus. The fact that the child riding the bus may attend public or private schools should not be a standard for action or inaction. (See footnote 11, State ex rel. Vanko v. Kahl (1971), 52 Wis.2d 206,188 N.W.2d 460, citing Philip B. Kurland, Of Church and State andthe Supreme Court, 29 University of Chicago L. Rev. (1961), 1, 96.)
As the court noted in the Vanko case:
 "`. . . there shall be reasonable uniformity in the transportation furnished . . . pupils whether they attend public or private schools' (sec. 121.54 (1), Stats.), . . ."
While your letter does not ask a question concerning the discipline of private school students riding the bus, such a discussion as the foregoing was felt necessary in view of the responsibility of the local school districts to provide public and private school students transportation on an equal basis. *Page 530 
In conclusion, it is not necessary that a student be suspended or expelled in order that his bus riding privilege be revoked. It is necessary, however, that each student, whether attending public or private school, be afforded the due process provided for by sec. 120.13 (1), Stats., as amended by ch. 94, Laws of 1973, before his or her bus riding privilege can be suspended or revoked.
VAM:JWC