FRED A. RISSER, President Pro Tempore Wisconsin State Senate
You ask whether use of the State Capitol building by the Madison Civic Music Association, Inc., to present a Christmas pageant is prohibited.
The Madison Civic Music Association is a nonstock, nonprofit corporation organized under ch. 181, Stats., espousing no religious doctrine, which exists, as set forth in its Restated Articles of Incorporation dated May 4, 1970, for the following reasons:
 "The purpose of this Association is to encourage and assist in the preservation of all forms of musical expression for the *Page 181 
education, benefit and enjoyment of residents of the city of Madison and adjacent communities. . . ."
Section 16.845 (1), Stats., permits use of state facilities "for free discussion of public questions, or for civic, social, recreational or athletic activities" at the discretion of the managing authority. Wisconsin Administrative Code sectionAdm 2.04 establishes the requirements for use of state buildings for the above activities. Under the statute and administrative rule, it is my opinion that the Madison Civic Music Association, Inc., may use the State Capitol building for its Christmas pageant. The only question remaining is whether use of the State Capitol building to present such a pageant violates the religious proscription of Wis. Const. art. I, sec. 18.
Wisconsin Constitution art. I, sec. 18 provides:
 "[1] The right of every man to worship Almighty God according to the dictates of his own conscience shall never be infringed; [2] nor shall any man be compelled to attend, erect or support any place of worship, or to maintain any ministry, against his consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries."
U.S. Const. amend. I provides in part:
 "Congress shall make no law [2] respecting an establishment of religion, or [I] prohibiting the free exercise thereof . . . ."
Wisconsin Constitution art. I, sec. 18. contains the same two elements as amendment I of the U.S. Constitution. Both elements in both constitutions are identified by the bracketed numbers.
An examination of decisions under U.S. Const. amend. I, the establishment clause bracketed [2] above, is helpful in analyzing the instant question under Wis. Const. art. I, sec. 18.
In 1802 President Thomas Jefferson wrote that the purpose of the religious clause of the first amendment was to build "a wall of separation between Church and State." 16 The Writings ofThomas *Page 182 Jefferson, A. Libscomb ed. (Washington: Library ed. 1904), p. 281. The metaphor, in effect, was adopted in Reynolds v. U.S.,98 U.S. 145, 164 (1879). Recently, however, the Court has stated inLemon v. Kurtzman, 403 U.S. 602, 614 (1971), as follows:
 ". . . the line of separation, far from being a `wall,' is a blurred, indistinct, and variable barrier depending on all the circumstances of a particular relationship."
A three-fold test has evolved to test for a violation of the Establishment Clause: (1) the practice must have a clearly secular purpose; (2) its primary effect must neither advance nor inhibit religion; and (3) the practice must not foster an excessive governmental entanglement with religion. Committee forPublic Education v. Nyquist, 413 U.S. 756, 773 (1973).
Purpose
The purpose must clearly be secular. A practice may clearly be secular although it also has major religious connotations. Thus, in McCowan v. Maryland, 366 U.S. 420 (1961), the Court upheld Sunday closing laws, notwithstanding their genesis in religion and the continuing advantage thereby provided for religious persons, especially those whose Sabbath is Sunday, since the purpose of providing a day of rest served the health, safety and well being of the citizenry. Similarly, the academic study of the Bible and religions properly informs a public educational curriculum. Epperson v. Arkansas, 393 U.S. 97, 106 (1968);Abington School District v. Schempp, 374 U.S. 203, 225 (1963); 55 Op. Att'y Gen. 262 (1966). Once the academic study of the Bible is converted into a religious exercise, however, the Establishment Clause is violated. Schempp, id., at p. 224.
As further examples, the erection of a statue of a Catholic nun in a city park was permissible since it primarily commemorated her charitable works. State ex rel. Singlemann v. Morrison,57 So.2d 238 (La.App. 1952), cert. denied, 57 So.2d 238 (La. 1952).Also see Meyer v. Oklahoma City, 496 P.2d 789 (Okla. 1972), cert.denied, 409 U.S. 980 (1972). An illuminated granite monolith with the Ten Commandments inscribed could be placed on courthouse grounds, since the Decalogue, despite its religious character, also is "an affirmation of at least a precedent legal code."Anderson v. Salt Lake City Corporation, 475 F.2d 29. 33 (10th Cir. 1973), cert. *Page 183 denied, 414 U.S. 879 (1973). On the other hand, the permanent erection of a lighted 51 foot concrete cross on a city owned hilltop visible for several miles was invalid as exhibiting a religious symbol. Lowe v. City of Eugene, 254 Ore. 518, 459 P.2d 222
(1969), appeal denied, 397 U.S. 591 (1970), cert. denied,397 U.S. 1042 (1970), reh. denied, 398 U.S. 944 (1970). See Note, "Constitutional Law — Religious Artifacts on Public Property," 1970 Wis. L. Rev. 1229. Also see, Annotation, "Erection, Maintenance, or Display of Religious Structures or Symbols on Public Property as Violation of Religious Freedom," 36 A.L.R.3d 1256.
Finally, the placing of a creche on federal parkland along with a Christmas tree, reindeer pen, yule log and fire area met the secular purpose test as being part of the expression of the nation's aspirations to foster peace and understanding, as well as its celebration of Christmas as a national holiday, by depicting the traditional aspects of our history. Allen v.Morton, 495 F.2d 65 (D.C. Cir. 1973).
Under Allen the instant pageant and the singing of Christmas music, including music originating in and continuing in religious worship, serves clearly secular purposes when placed in the context of the Capitol. The Christmas story is part of our national heritage. Music appreciation itself has a secular purpose. The Christmas songs, whether or not one listens to the words, evoke hopes for peace among men, religious and nonreligious alike. In the context of the Capitol, the singing has aesthetic value to be appreciated as art for its own sake, as does the other pageantry, and is not for the sake of a religious exercise or devotion.
There is no more reason to deny the secular value of Handel's Messiah as performed by a University choir. whether on campus or in the Capitol, much less a private group like the association, because it also is sung in churches for religious purposes, than to deny the University Band's playing "When The Saints Go Marching In" at a football game because of its religious connotations.
Effect
The "effect" criterion is that the practice must neither advance nor inhibit religion.
The fact that religion somehow is benefited is not the point. Thus, the exemption of church property from taxation has been upheld. *Page 184 State ex rel. Reynolds v. Nusbaum, 17 Wis.2d 148, 115 N.W.2d 761
(1962); Walz v. Tax Commission, 397 U.S. 664 (1970). "The crucial question is not whether some benefit accrues to a religious institution as a consequence of the legislative program, but whether its principal or primary effect advances religion."Tilton v. Richardson, 403 U.S. 672, 679 (1971). Consequently, the government may provide buses to transport parochial students although church schools thereby enjoy the saved resources for their religious purposes. Everson v. Board of Education, 330 U.S. 1
(1947); State ex rel. Vanko v. Kahl, 52 Wis.2d 206,188 N.W.2d 460 (1971).
The Court refined its "effects" test in Hunt v. McNair,413 U.S. 734, 743 (1973), as follows:
 "Aid normally may be thought to have a primary effect of advancing religion when it flows to an institution in which religion is so pervasive that a substantial portion of its functions are subsumed in the religious mission or when it funds a specifically religious activity in an otherwise substantially secular setting. . . ."
The first prong of this test is whether the sectarian and the secular have become inseparable. Tilton v. Richardson, supra, at p. 680. Permitting the pageant by a private group does not infuse a religious institution with anything. The sectarian mission does not so subsume the secular purpose that they become inseparable. Singing Christmas songs in the Capitol and erecting a nativity scene there will not merge music appreciation and enjoyment of a national heritage tradition with religious institutions, any more than will playing Puccini's Mass in the University's Music School, or by the University at a recital, or the display of Michaelangelo's Basilica ceiling in a state owned art center.
It follows that the second prong of the effects test is no barrier. A specifically religious activity is not funded.
Entanglement
The criterion of excessive governmental entanglement with religion is hardly apposite. This criterion only compels avoidance of governmental surveillance, otherwise needed, to protect against state subsidy of religious ventures. State exrel. Warren v. Nusbaum, *Page 185 55 Wis.2d 316, 330, 198 N.W.2d 650 (1972); Tilton v. Richardson,supra, at p. 688. There is no such threat here.
It is, therefore, my opinion that the described Christmas pageant presented by the Madison Civic Music Association, Inc., in the Capitol building does not involve governmental advancement or inhibition of religion or governmental entanglement with religion as contemplated and prohibited by Wis. Const. art. I, sec. 18.
BCL:JPA